*Decisions will be entered under Rule 50.*

J. H. ENGLAND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69416. Filed March 27, 1962.

*James Powers, Esq.*, for the petitioner.
*James Q. Smith, Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency of $6,393.19 in the income tax of petitioner for the calendar year 1954. The sole issue for decision is, whether the amount of $15,800 which petitioner paid to his former wife as "rental," pursuant to the terms of a written lease covering certain farm property, is deductible by him as an expense of his farming operations; or whether said amount constituted in reality, part of a property settlement between them incident to their divorce—and hence is not deductible.

The parties have stipulated that, in any event, petitioner is entitled to deduct in the taxable year, a net operating loss carryback from the subsequent year 1956. Effect will be given to such stipulation in the recomputation to be made herein under Rule 50.

FINDINGS OF FACT.

Some of the facts were stipulated. The stipulation of facts, and the exhibits identified therein, are incorporated herein by reference.

The petitioner, J. H. England, resides in Florence, Arizona. He filed a Federal income tax return for the calendar year 1954, with the district director of internal revenue at Phoenix. Throughout the taxable year and for 20 years prior thereto, petitioner was in the business of raising cotton.

Petitioner and Ruby M. England were married in 1931. In February 1954, Ruby filed an action for divorce against petitioner in the Superior Court for Pinal County, Arizona; and she therein requested the court to make an equitable division of the community property which she and petitioner owned. One portion of this property which Ruby desired to have set over and conveyed to her in the settlement, was a parcel whereon the family residence was situate, hereinafter called "home place." The home place consisted of about 700 acres, of which 316 acres were covered by an "allotment" from the United States Department of Agriculture permitting cotton to be grown thereon.

Petitioner had planted cotton on the aforesaid 316 acres during the month of January 1954, which was prior to the time when Ruby filed her divorce action. Petitioner desired to take the crop to maturity, and Ruby was agreeable that he do so. Accordingly, Ruby proposed in a letter written by her attorney on March 4, 1954, that she be given complete title to the home place in the property settlement; and she agreed that if this were done, she would then lease the farm area of said property to petitioner for the remainder of the year 1954, at a rental of $15,800. The amount of this rental was computed on the basis of $50 per acre for the 316 acres covered by the above-mentioned cotton allotment; and, since the lease was to cover a period of only about 9 months, and the crop had already been planted on the premises by petitioner, said $15,800 was a fair and reasonable rental. Petitioner, acting through his attorney, agreed to Ruby's proposal.

On April 10, 1954, petitioner and Ruby entered into a property settlement agreement which provided in part as follows:

FIRST: First Party [petitioner] agrees to and does hereby convey to Second Party [Ruby], free and clear of liens and encumbrances, save and except real property taxes for the year 1954, assumed by Second Party, as and for her sole and separate property and estate, the following described real property, together with each and every, all and singular the improvements thereon situate in the County of Pinal, State of Arizona, as follows, to-wit: [There was then set forth a legal description of the entire home place here involved.]

Immediately thereafter, Ruby, acting as the owner of said property, executed a lease to the petitioner covering the farm area thereof on which the cotton was planted, for a period extending to January 1,

1955. Petitioner agreed that in consideration for such leasing of the premises, he would pay Ruby "as rent for the same" the sum of $15,800 in cash, maintain the property in good condition, pay all charges and assessments for irrigation water, and participate in all Government farm programs for the demised premises.

Also, in preparing the above lease agreement, Ruby acting as the contemplated landlord of the property covered by the lease, executed a landlord's waiver of any objection to petitioner, as lessee, mortgaging his interest in the cotton crop on the demised premises, in order that petitioner might obtain the cash for the agreed rental. And after so obtaining this cash, petitioner paid the same to Ruby by check which carried endorsements both on the face and on the back thereof, that such payment was "Rent in Full on 700 acre farm for 1954." Ruby then accepted said check, and endorsed the same for payment by the bank, immediately under said restrictive statement; and she thereupon received payment of the amount of said check.

Immediately following the execution of all the foregoing agreements, the court entered its judgment and decree of divorce; and it incorporated as a part thereof a copy of the above-mentioned property settlement in which complete title to the home place was given to Ruby.

The petitioner, in his Federal income tax return for the year 1954, claimed a deduction for the $15,800 rental which he had so paid to Ruby, as a business expense on his farming operations. The respondent, in his notice of deficiency, disallowed this deduction on the ground that said payment was merely a part of the property settlement. However, at or about the same time, respondent also issued a notice of deficiency to Ruby in which he took the inconsistent position that the same payment constituted rental income to her pursuant to the terms of the above-mentioned lease agreement.

OPINION.

We think there is no merit to the position which the respondent has taken in this case (inconsistent with the position which he took in the case of Ruby) that the payment of $15,800 here involved did not constitute rental under the parties' lease agreement, but was merely a cash payment incident to the divorce settlement. Adoption of such contention of respondent would require us to adopt a position inconsistent with the written provisions of the settlement agreement, the lease, the landlord's waiver, and also the restrictive provisions of the check under which the payment was made by petitioner and received by Ruby. As we have heretofore found as a fact, the settlement agreement provided for the conveyance to Ruby of the complete title to the home place with all improvements thereon, free and clear

of all liens and encumbrances. The lease agreement was then executed by Ruby in her capacity as the owner of such property; and it imposed legal obligations upon the petitioner, not only for the payment of the specified rent, but also for the maintenance of the property and payment of charges and assessments for irrigation privileges. Ruby also executed a landlord's waiver, in order to enable petitioner to borrow money from a third party, on the crop which was growing on the demised premises. And she thereafter accepted the cash payment in question by endorsing the check therefor, immediately under the statement endorsed thereon that such payment was in satisfaction of the "rent" due.

It is true that Ruby in her testimony at the trial herein attempted to repudiate the legal effect of all the above instruments, by taking the position that her intention in executing the same was not to rent the property, but merely to receive the disputed $15,800 as part of her property settlement incident to the divorce. Such position is in conflict with that of the petitioner in his testimony; and it also is in conflict with the terms of the settlement agreement itself, which the court incorporated and approved in its judgment and decree.

We resolve this conflict of testimony in favor of the petitioner. All of the instruments in question were carefully prepared by counsel for the parties; and in our view the terms of such written instruments should be accepted as being more persuasive of the true intent of the parties, than is Ruby's self-serving statement that she had contrary intentions.

We decide the issue in favor of the petitioner, and hold that petitioner's said payment of $15,800 is deductible by him as a business expense of the taxable year involved.

*Decision will be entered under Rule 50.*