ROBERT W. BOUCHER and BERNICE L. BOUCHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Boucher v. Commissioner
Docket No. 14160-78.
United States Tax Court
T.C. Memo 1981-258; 1981 Tax Ct. Memo LEXIS 488; 41 T.C.M. (CCH) 1589; T.C.M. (RIA) 81258; May 27, 1981. Paul D. Miller, for the petitioners. Dan A. Lisonbee, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for calendar years 1974 and 1975 in the amounts of $ 4,768.73 and $ 3,820, respectively. One of the issues raised by the pleadings has been conceded by petitioners, leaving for decision: (1) whether in calendar years 1974 and 1975 payments made by petitioner Robert W. Boucher to his former wife pursuant to a divorce decree are deductible by him as alimony under section 215, I.R.C. 1954; [1] and (2) whether for calendar year 1974 petitioners are entitled to a section 162 business expense deduction for their 1974 payment to the lessee of a portion of farmland which petitioners purchased in 1973. *490 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Robert W. Boucher (petitioner) and Bernice L. Boucher, husband and wife, who resided in Conrad, Montana, at the time of filing the petition in this case, timely filed joint Federal income tax returns for calendar years 1974 and 1975 with the Internal Revenue Service. Petitioner and his former wife, Billie Irene Boucher, were married on June 29, 1941, in Conrad, Montana. At the time of the marriage neither petitioner nor Billie owned any property. While Billie did not inherit or receive as a gift any property during the marriage, petitioner inherited 520 acres of farmland from his father in 1963 and used moneys both gifted to him by his father and inherited from his father to acquire an additional 520 acres of farmland from his brother in 1964. During the first year of the marriage, petitioner and his brother leased and farmed some land in Montana and engaged in some type of cleaning business. Between 1942 and 1946, petitioner served in the Armed Forces, and Billie, who was not a high school graduate, worked for a Montana Dakota Utilities office. She used her earnings primarily for her *491 support. Shortly after petitioner was released from the Armed Forces in 1946, Billie left her job. She was not again employed during the duration of the marriage. After 1946 petitioner farmed on the couple's ranch near Conrad, Montana. Petitioner and Billie resided on the ranch year round until their children were school age, at which time during the academic year Billie resided with the children in their Conrad townhouse which petitioner had constructed. When Billie lived on the ranch, she cooked the meals for petitioner, the children, and any hired helpers. Occasionally Billie ran the farm combine and drove the truck to assist petitioner in his work. In 1971 Billie petitioned for a divorce to the District Court of the Ninth Judicial District of Montana. In pertinent part, the complaint stated: VIII That the plaintiff is entitled to an equal division of all real and personal property which has been acquired in the name of the defendant since the marriage as such is the result of the mutual efforts and hard work of both the plaintiff and defendant over the past 30 years, the legal title thereto being carried nominally in the name of the defendant for business convenience *492 and the benefit of the plaintiff and defendant generally always with the understanding that the plaintiff and defendant through their mutual efforts equally purchased, acquired and owned all forms of property since the date of marriage, and by virtue thereof, a resulting trust exists whereby the defendant holds title to one-half of all property acquired since the marriage for and on behalf of plaintiff. That for this reason, the plaintiff is entitled to have one-half of all such property conveyed over to her and vested in her name absolutely including all savings and investments. WHEREFORE, Plaintiff prays judgment as follows: 2. That defendant be required to pay to the plaintiff for her support, maintenance and alimony during the pendency of this action and hereafter, the sum of $ 750.00 per month. 3. That the plaintiff has required legal counsel herein to prepare and prosecute her claim for relief and has retained the law firm of Frisbee & Moore of Cut Bank, Montana, and reasonably requires the sum of $ 7500.00 as and for her attorneys fees herein. 4. That defendant be required to divide equally the property acquired mutually during the marriage. Aside from the above-described *493 1,040 acres of farmland titled in petitioner's name alone, at the time of the divorce real property was owned as follows: (1) 160 acres purchased in the name of Robert Boucher on September 16, 1947, from Sam and Ada Crawford for $ 9,300, of which at least $ 7,000 had been saved by petitioner from his military salary earned between 1942 and 1946; (2) 480 acres purchased from petitioner's brother and his brother's wife on December 1, 1964, for $ 71,100, which land was titled in petitioner's name alone; (3) 240 acres purchased in the name of Robert Boucher from Wayne and Lillian Fjosee on August 31, 1968, for $ 11,775; (4) 480 acres acquired for $ 23,450 from Mary Ayers and deeded in the names of Robert and Billie Boucher, each with a one-half undivided interest. The deed was dated April 1, 1963, and it was recorded on January 24, 1964; (5) A townhouse in Conrad, Montana, owned by Robert and Billie Boucher as joint tenants. At the time of the divorce all of the realty and farm machinery owned by petitioner and his former wife was worth over $ 425,000. The District Court in Montana granted the divorce on June 30, 1971. Under the terms of the June 30, 1971, divorce decree *494 petitioner transferred to Billie his interest in the Conrad townhouse together with all of the household furnishings and their 1968 Ford automobile. Petitioner retained all of the property titled in his name alone. Subject to the joint interest of Billie, petitioner held the 480 acres of farmland previously purchased from Mary Ayers. The divorce decree also ordered petitioner to pay $ 700 per month to Billie for the rest of her life in addition to her costs of the divorce action. In pertinent part, the divorce decree ordered: 2. For property settlement herein Defendant is ordered to: (a) Pay to Plaintiff [Billie Boucher] for the remainder of her life the sum of $ 700.00 per month each month hereafter commencing on the 1st day of July and on the 1st day of each consecutive month hereafter. Such obligation shall be impressed as a lien against all real property of Defendant in Pondera County, Montana; (b) Convey to Plaintiff the town house property located in Conrad, Montana and described as follows: South 8-1/2 feet of Lot 6; ALL of Lot 7; North 35-1/2 feet of Lot 8, Block 45, Conrad Second Additon (c) Transfer and assign to Plaintiff the physical possession and *495 control of One (1) 1968 LTD Ford 4-door autombile together with the Montana Certificate of Title thereto. 3. That Defendant shall hold and operate the said farm and ranch subject to the lien aforesaid and subject to the joint tenancy interest of Plaintiff; As a result of the divorce, Billie retained the $ 2,000 balance in their joint bank account. In July 1971 Robert Boucher filed with the Montana District Court a motion to alter or amend its judgment so as to state that the $ 700 per month awarded to Billie constituted alimony. In an order filed July 28, 1971, stating that the divorce decree "wholly and correctly sets forth the intent, determination and judgment of the Court," the District Court refused petitioner's request. As directed by the divorce decree, in each taxable year in issue, petitioner paid $ 8,400 to Billie. In fall 1973 petitioner purchased farmland, a portion of which was subject to a lease in favor of the seller's nephew. When petitioner purchased the land he intended to take possession of the leased portion upon the expiration of the lease, which, according to its terms, terminated approximately one year after the purchase. Although the lessee had *496 intended to place the leased property in summer fallow, [2] upon the development of serious health problems he offered to sell his interest in the land to petitioner for $ 1,775. In spring 1974 petitioner accepted the sales offer, paid the lessee $ 1,775, and immediately took possession of the land. On their income tax returns for each of the calendar years 1974 and 1975, petitioners claimed a deduction for alimony payments of $ 8,400 per year. On their calendar year 1974 income tax return, petitioners claimed a business expense deduction for the purchase of summer fallow in the amount of $ 1,775. In his statutory notice of deficiency respondent disallowed the claimed deductions with the explanation that-- (b) The $ 1,775.00 deducted on your 1974 return as summer fallow purchase was a capital expenditure within the meaning of Section 263 of the Internal Revenue Code and, therefore, is not an allowable deduction. (c) Payments totaling $ 8,400.00 which you made in *497 each of the taxable years 1974 and 1975 to your former wife, Billie I. Boucher, were not alimony payments but were payments for property settlement. Accordingly, your are not entitled to this deduction under Section 215 of the Internal Revenue Code. OPINION The first question for decision is whether petitioner's payments to his former wife pursuant to the divorce decree are deductible under section 215 as alimony.Respondent denied the claimed alimony deduction on the ground that the payments were made solely in satisfaction of the former wife's property rights and therefore were not periodic payments made in discharge of a legal obligation which arose out of the prior marriage. Where, upon divorce, there is a division of martial properties or where a husband makes installment payments in satisfaction of the property rights of the former wife, the amounts paid are capital in nature.These payments are not includable in the former wife's gross income under section 71 [3] nor deductible by the husband under section 215. [4]Wright v. Commissioner,62 T.C. 377, 389 (1974); Thompson v. Commissioner, 50 T.C. 522, 525 (1968). Where *498 pursuant to a divorce decree a former husband makes periodic payments to a former spouse in discharge of his legal obligation of support which arose from the prior marital relationship, the payments are deductible by the payor. *499 As we have pointed out numerous times, section 71 does not use the word "alimony." See, e.g., Wright v.Commissioner, supra. The regulations explain that in order for payments made to a former spouse to be deductible, such payments must be made in discharge of a legal obligation imposed upon the husband because of the prior marital relationship in recognition of the general obligation to support. Section 1.71-1(b)(4), Income Tax Regs. Where such periodic payments are not made to recompense a spouse for surrender of her property rights, the cases refer to the payments as "alimony." We must determine whether the payments which petitioner was required by the divorce decree to make to his former wife arose from his obligation for her support because of the prior marital relationship or from a requirement that his former wife's property rights be satisfied. More specifically at issue is whether the divorce decree actually effected a division of property between the parties thereby compensating the former wife for her property rights.Resolution of the issue is based on the facts and circumstances of each particular case. Hesse v. Commissioner, 60 T.C. 685, 691 (1973), *500 affirmed without published opinion 511 F.2d 1393 (3d Cir. 1975). Petitioners urge that although the divorce decree indicates that the $ 700 monthly payments to petitioner's former wife, for her life, are in the nature of a property settlement, labels assigned by a divorce decree to payments to a former spouse are not conclusive. Petitioners contend that the label is but one of numerous factors to be considered in determining whether the payments constitute alimony for purposes of the Federal tax laws. Their position is that the monthly payments did not represent compensation to petitioner's former wife for the surrender of any ownership interests in some of the real property retained by petitioner. On the other hand, respondent takes the position that by operation of Montana law the District Court clearly and properly decided that the $ 700 monthly payments were in settlement of petitioner's former wife's interest in realty acquired during the marriage. He contends that the approach of the District Court was correct in that the Montana courts have held that at the time of divorce a decision on property division should be based upon consideration of the parties' financial *501 contributions as well as their performance of duties and responsibilities during marriage. We agree with petitioner's contention that the label which a divorce decree assigns to payments made by one former spouse to another is not conclusive. Thompson v. Commissioner, supra at 525; Bardwell v. Commissioner, 38 T.C. 84, 89-90 (1962), affd. 318 F.2d 786 (10th Cir. 1963). This fact, however, does not mean that the Court should not give such weight to the wording of the decree as is warranted under all the facts and circumstances of the case. Whether petitioner's former wife acquired an interest in the property accumulated during their marriage, even though title to the property was in petitioner's name alone, depends upon Montana law. Pursuant to the statutory law in effect in Montana in 1974, during marriage "Neither husband nor wife has any interest in the property of the other * * *" unless expressly declared otherwise in some written document. Section 36-104, Revised Codes of Montana (R.C.M.) 1947; section 67-308, R.C.M. 1947; section 67-313, R.C.M. 1947. According to the Supreme Court of Montana, it is also the law of that *502 State that property "acquired jointly during the marriage may be divided by [the divorce] court whether the title thereto is in either or both of the parties." Libra v. Libra, 157 Mont. 252, 484 P.2d 748, 751 (1971), referring to Johnson v. Johnson, 137 Mont. 11, 349 P.2d 310 (1960). In Cook v. Cook, 159 Mont. 98, 495 P.2d 951, 593 (1972), the Supreme Court of Montana took this Libra holding one step further when it stated that the trial court in a divorce proceeding "may make an equitable division of the litigants' property in a divorce action regardless of the state of title to that property and regardless of actual financial contribution." In the Cook case, the court indicated that the various provisions of Title 36, R.C.M. 1947, setting forth the rights and obligations of the husband and wife during marriage, did not control upon the dissolution of the marriage by divorce.The court stated at 593 that-- In the latter, event, the trial court becomes charged with the duty of granting "complete relief", including property division, according to the equities of each individual case. [Fn. ref. omitted.] The district judge's *503 broad powers in this regard are expressed in section 21-139, R.C.M. 1947, wherein he is empowered to make "suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively * * *. The property need not be acquired jointly for the District Court in Montana to divide the property in a manner it perceives to be equitable to the parties to the divorce. These cases clearly indicate that in Montana, which is not a community property state, a wife may gain rights to a portion of property legally titled in the name of her husband alone. These property interests will inure as a result of monetary and non-monetary contributions to the acquisition and maintenance of the property titled in the husband's name. With respect to the non-monetary contribution, the courts will consider the ordinary and extraordinary household work of a spouse in addition to the duties and responsibilities expected to be performed outside the confines of the home.[5]
*504 In the instant case, of the property acquired during the marriage (approximately 2,400 acres of farmland and a townhouse), only the townhouse and 480 acres of farmland were titled jointly to Billie Boucher and petitioner. Petitioner acquired and titled the remaining 1,920 acres of farmland as separate property. The divorce decree issued by the District Court indicated that as a result of Billie's non-monetary contributions to the marriage, by the time of divorce she was entitled to an interest in the properties titled in petitioner's name alone. Even though petitioner filed a motion with the District Court requesting the Court to alter or amend its judgment to state that the $ 700 monthly payments were alimony, the Court denied the request. Petitioner's testimony in the case at bar indicates that when Billie Boucher lived on the ranch with petitioner, she cooked the meals for petitioner, their children, and the hired laborers (only one person except at the time of harvest) and intermittently drove a truck and combine. Although petitioner claims that the efforts of his former wife should not have been viewed by the District Court as sufficient to entitle her to rights in his separate *505 property, we are of the opinion that he has not proved that her efforts did not contribute to the acquisition and maintenance of the property. Welch v. Helvering, 290 U.S. 111 (1933). Petitioners take the position that numerous factors should be considered when determining whether payments are alimony as opposed to property settlement remuneration. Petitioners contend that the surrender of property rights by a spouse is only one such factor. They suggest that we should consider other factors, including whether the payments will terminate upon the death or remarriage of the receiving spouse, whether the receiving spouse had a means of support independent of the payments, and whether the payments would aggregate a fixed sum. To be sure, these factors are important in determining the proper classification of the payments. See Gammill v. Commissioner, 73 T.C. 921 (1980). Yet, none of these factors alone is dispositive of the issue. While the evidence does indicate that Billie Boucher did not have a means of support other than the $ 700 monthly payment, petitioner testified and the record indicates that at the time of divorce real and personal property *506 owned by petitioner and Billie was worth over $ 425,000, of which Billie received in kind at the time of divorce property worth less than $ 50,000. It is clear from the record here that the Montana court considered the $ 700 monthly payments to be a part of a property division and this fact is entitled to substantial weight. See Mills v. Commissioner, 54 T.C. 608, 618 (1970); Jackson v. Commissioner, 54 T.C. 125, 132 (1970). Upon consideration of the entire record in the instant case in relation to all of the above factors, we are of the opinion that the $ 700 monthly payments were in satisfaction of Billie Boucher's property rights. Therefore petitioners are not entitled to the claimed alimony deduction of $ 8,400 in each of the years here in issue. The second issue for decision is whether petitioners are entitled to a section 162 business expense deduction for their $ 1,775 payment in 1974 to the lessee of a portion of the farmland which petitioners purchased in 1973. Petitioners do not deny that the farmland purchased in 1973 was purchased subject to an existing lease which would terminate approximately one year thereafter, nor do petitioners *507 deny that the existence of the lease precluded their taking possession of the leased property until expiration of the lease. Petitioners admit that in the spring of 1974 they paid the lessee $ 1,775, which payment enabled them to take immediate possession of the previously leased land. The disagreement arises over the appropriate characterization of the $ 1,775 payment. Respondent contends that the petitioners incurred the payment in order to obtain the release of the lessee's leasehold interest and to acquire the full use of the land. As such, respondent argues that the payment was a nondeductible capital expenditure under section 263. On the other hand, on brief petitioners take the position that the expenditure should be deductible under section 162 because-- the only thing the lessee had to sell was the summer fallow and his right to possession for an additional six months. * * * the situation is no different than if Petitioner had purchased the property and hirerd the lessee to do the summer fallow rather than doing it himself. * * * We are of the opinion that the $ 1,775 payment was for the cancellation of the lease on the land petitioner had purchased in 1973. When *508 petitioners purchased the farmland in 1973 subject to the lease, they not only became the owners of the property, but they also stepped into the shoes of the lessor of that portion of the property covered by the lease. As a general rule, amounts paid to a lessee for the cancellation of a lease prior to its expiration date are capital expenditures, amortizable over the unexpired term of the canceled lease. Miller v. Commissioner, 10 B.T.A. 383 (1928); Borland v. Commissioner, 27 B.T.A. 538, 542 (1933); Rosenblatt v. Commissioner, 8 T.C. 1245, 1248 (1947); Peerless Weighing and Vending Machine Corp. v. Commissioner, 52 T.C. 850, 852 (1969). The fact that the lessee in this case intended to place the leased property in summer fallow does not cause the payment made by petitioners to be for other than the immediate right to use of the land upon cancellation of the lease. The cancellation of the lease represents the cost to the lessor of acquiring a valuable property right to which he otherwise would not have been entitled, specifically the right of possession, enjoyment, and use of the property for the unexpired lease term. *509 However, in this case the lease would have expired in the fall of 1974, and since the unexpired lease term was less than one year, the spring 1974 payment of $ 1,775 for cancellation of the lease is deductible in full in 1974. Respondent suggests that the outcome of this case is controlled by Bennett Land Co. v. Commissioner, 70 T.C. 904 (1978), and Wiegand v. United States, 422 F.Supp. 276 (D. Mont. 1976), affirmed in an unpublished opinion (9th Cir. 1977), and petitioners argue that these cases are distinguishable. We agree with petitioners that these cases do not control of outcome here. In Bennett Land Co., supra, prior to the sales of farmland to the taxpayer, the seller had summer fallowed the land and incurred $ 1,800 of expenses in doing so. The sales agreement between the seller and the taxpayer allocated $ 5,500 of the purchase price to the increased fair market value of the land attributable to the prior summer fallowing. After explaining that summer fallowing is a method of farming utilized by farmers where annual precipitation is insufficient to grow crops to maturity each year on the land and that as a result of summer *510 fallowing the farmers' crop yield is maximized, [6] we held that the expenses attributable to the summer fallow were not deductible by the taxpayer.We indicated that the expense to summer fallow was incurred by the seller of the property and that therefore the taxpayer was not entitled to deduct the expense of another party.We also stated that summer fallow is not an asset unto itself and may not be segregated from the land, and accordingly the $ 5,500 of the purchase price attributable to the increase in the land's fair market value was part of the taxpayer's capital investment in the property. Similarly, in Wiegand v. United States, supra, the purchased property had been summer fallowed at the seller's expense, and the purchasing taxpayers sought to deduct as an ordinary and necessary business expense the amount of the increase in the purchase price attributable to the summer fallow.
*511 Clearly, the facts of the Bennett and Wiegand cases are distinguishable from the case at bar. Here, there was no prior summer fallowing of the property which petitioners purchased. Petitioners purchased the property subject to a lease. By subsequently paying the lessee $ 1,775, petitioners canceled the lease and obtained the right to possess and utilize the land as they saw fit. The $ 1,775 is amortizable over the remaining life of the canceled lease. The payment was made in 1974 and the lease would have expired later in that year. Therefore the entire $ 1,775 is deductible in the year 1974. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue, unless otherwise stated.↩
2. Summer fallow is a farming method which leaves property in a fallow condition for one season in an attempt to maximize crop production and quality in the following planting season.↩
3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENT. (a) General Rule.-- (1) Decree of divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intevals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (c) Principal Sum Paid in Installments.-- (1) General rule.--For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years.--If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. ↩
4. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *↩
5. See Hunnewell v. Hunnewell, 160 Mont. 125, 500 P.2d 1198 (1971 and 1972); Francke v. Francke, 161 Mont. 98, 504 P.2d 990↩ (1973); sec. 48-321, R.C.M. 1947.
6. In Bennett Land Co. v. Commissioner, 70 T.C. 904, 905 (1978), we explained: Summer fallowing is a method of forming utilized by some farmers in areas where the annual rate of rainfall or precipitation is insufficient to grow a crop to maturity each year on the same land. Therefore, crops are planted every other year rather than annually. During the year that a crop is not planted, the land is maintained in a fallow condition by cultivation. This process consists of a series of operations which are part of preparing the seedbed for the next crop to be grown. The farmer must till the soil during the year that it is being fallowed in order to kill the weeds and break the capillary action of moisture rising to the surface, thus preventing loss of moisture in the soil. This maximizes the crop yield the following year and a greater yield of crops is produced than if the farmer had planted crops each year. The value of the summer fallow is fully utilized and exhausted in the production of the crop when the crop is harvested. * * *↩