JOHN MCINTOSH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21618–81.     Filed July 16, 1985.

*Lane M. Hauge* and *Lynn M. Seelye*, for the petitioner.
*Richard Jones* and *J.A. Lopata*, for the respondent.

OPINION

CLAPP, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for the year 1978 in the amount of $129,398. After concessions, the sole issue for decision is whether the transfer of a one-half interest in appreciated ranch land by John McIntosh to his former wife pursuant to a divorce settlement agreement is a taxable event.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioner John McIntosh resided in Havre, Montana, at the time his petition was filed. Petitioner was married to Jean McIntosh (hereinafter referred to as Jean or former wife) on July 22, 1954. Shortly thereafter, on September 17, 1954, petitioner executed a contract for deed, acquiring an equitable

fee interest in the Phillips Place, a tract of land containing 2,120 acres and costing $78,000. The title to the Phillips Place was held by petitioner in his name, alone. During the course of their marriage, petitioner's wife helped petitioner work the farm and ranch, cooked for him and the other farm workers, raised the couple's four children, and maintained the family home.

On October 17, 1978, a petition for dissolution of marriage was filed by Jean McIntosh. On or shortly after October 17, 1978, petitioner and his former wife entered into a property settlement agreement. This agreement states in pertinent part:

### IV.

The Parties are the owners of certain real and personal property which has been acquired both prior to and since their marriage through the efforts of both Parties. The Parties further declare to each other that they have fully disclosed to the other the complete nature, description and extent of all property interests acquired in their individual and in their joint names, both prior to and since the date of their marriage and in which they have a present legal, equitable or beneficial ownership interest; and the Parties are each aware of the encumbrances and liabilities affecting their farm and ranch properties and the extent of their personal liability in connection therewith; and in consideration of the agreements herein contained, it is mutually agreed that the property of the Parties hereto shall be divided and finally distributed as follows:

> \* \* \* \* \* \* \*

4. In lieu of alimony, support and maintenance, the Wife, Jean D. McIntosh, is to receive and retain ownership of an undivided one-half (½) interest in approximately 2,760 acres of farm and ranch lands. \* \* \* [I]t is understood the Wife will lease her interest in said lands to the Husband, John S. McIntosh, for a term of ten (10) years, on a one-fourth (¼) crop share basis, with a minimum share guarantee of at least 3,000 bushels per year to be delivered in the Elevator in the Wife's name.

On October 25, 1978, petitioner, pursuant to the above agreement, tranferred an undivided one-half interest in 1,800 acres of the Phillips Place to his wife. Petitioner and his wife were divorced by decree of dissolution of marriage, dated November 13, 1978. The court stated in the decree that both parties were able-bodied persons, capable of working and earning sufficiently to meet their needs, and neither required

any support from the other. The property agreement was incorporated as part of the decree.

In the notice of deficiency, the Commissioner included, among other adjustments, an amount of capital gain as a result of the transfer of the ranch land from petitioner to his former wife.

After concessions, the sole remaining issue in this case is whether petitioner's transfer of the undivided one-half interest in ranch land to his former wife, Jean, pursuant to a property settlement agreement, executed in connection with their divorce, constitutes a taxable disposition.

The leading case on this issue, applicable to the transfer herein, is *United States v. Davis*, 370 U.S. 65 (1962).[1] The taxpayer-husband transferred appreciated stock to his former wife pursuant to a voluntary property settlement agreement, incorporated into the divorce decree. Under Delaware law, the stock transferred was that of the husband, subject to certain marital rights of the wife, including a right of intestate succession and a right upon divorce to a share of the husband's property. The taxpayer argued that the transfer was comparable to a nontaxable division of property between two co-owners while respondent contended that it more resembled a taxable transfer of property in exchange for the release of an independent legal obligation. The Supreme Court, in finding the transfer to be a taxable event, stated:

the inchoate rights granted a wife in her husband's property by the Delaware law do not even remotely reach the dignity of co-ownership. The wife has no interest—passive or active—over the management or disposition of her husband's personal property. Her rights are not descendable, and she must survive him to share in his intestate estate. Upon dissolution of the marriage she shares in the property only to such extent as the court deems "reasonable."* * * Regardless of the tags, Delaware seems only to place a burden on the husband's property rather than to make the wife a part owner thereof. In the present context the rights of succession and reasonable share do not differ significantly from the husband's obligations of support and alimony. They all partake more of a personal liability of the husband than a property interest of the wife. * * * Although admittedly such a view may

---

[1]The Tax Reform Act of 1984, Pub. L. 98–369, sec. 421, 98 Stat. 793, added a new Internal Revenue Code sec. 1041 which provides that no gain or loss will be recognized on a transfer of property from an individual to a former spouse incident to a divorce. This section, which effectively overrules the *Davis* decision, applies to transfers made after July 18, 1984, with some exceptions not applicable in this case. Hereinafter, unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect in the tax year in issue.

permit different tax treatment among the several States, this Court in the past has not ignored the differing effects on the federal taxing scheme of substantive differences between community property and common-law systems. [370 U.S. at 70–71.]

Petitioner in this case argues that, in accordance with the Supreme Court's opinion in *Davis*, State law should be consulted to determine the nature of Jean's interest in the property. Under Montana law, Jean had a vested interest in the ranch land property. Therefore, the transfer constitutes a division of property between co-owners and is a nontaxable event.

On the other hand, respondent argues that the question of the taxability of a transfer of appreciated property in connection with a divorce is a Federal question to be decided by Federal courts using Federal criteria. Respondent contends that considering the rights granted a spouse by Montana law and evaluating those rights in light of the *Davis* criteria, e.g., descendible rights, management of property, the transfer of the property in the instant case more resembles a taxable transfer of property in exchange for the release of an independent legal obligation than it resembles a nontaxable division of property between two co-owners.

The key question presented in this case then is what is the nature of the former wife's interest, if any, in the ranch land and what criteria should be used to determine that interest.

In determining the criteria, we note the well-settled principles that State law creates legal interests and rights. Federal law determines what transactions involving interests or rights created by State law should be taxed. *Morgan v. Commissioner*, 309 U.S. 78, 80 (1940). In determining ownership of property, State law controls. *United States v. Mitchell*, 403 U.S. 190, 197 (1971).

Respondent has argued previously that the *Davis* case established Federal criteria by which to determine whether a former spouse has a sufficient property interest to characterize as co-ownership. Respondent's argument has been rejected, in particular, in the series of *Collins* cases. The issue there was whether the transfer of property, which was held in the husband's name only, to his former wife pursuant to a property settlement agreement was a taxable event. The pertinent Oklahoma statute provided:

As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. [Okla. Stat. Ann. tit. 12, sec. 1278 (West 1961).]

The Tax Court in *Collins v. Commissioner*, 46 T.C. 461 (1966), found that under Oklahoma law, property acquired jointly during marriage was similar to the concept of community property. However, the former spouse had no vested interest in jointly acquired property separately held by the other spouse prior to an action by a court incident to a petition for divorce. *Davis* was referring to property jointly owned, that is title held jointly, or community property. Because neither category applied, the Court found the transfer taxable. In *Collins v. Commissioner*, 388 F.2d 353 (10th Cir. 1968) (hereinafter referred to as *Collins I*) the Tenth Circuit agreed with the Tax Court that the transfer was taxable. The court stated that *Davis* required an examination of the State law controlling the disposition of the property to determine the exact nature of the disposition. It found that the tenor of the Oklahoma cases dealing with the relevant statute was that the division is of jointly owned property and is to be considered separately from the husband's obligations of alimony and support and maintenance. "[I]t appears that the division of jointly acquired property pursuant to a divorce decree in Oklahoma is in many instances in direct recognition of the wife's right to a share in the property." (388 F.2d at 57.)

However, the Court went on to conclude the following:

whatever the nature of the rights granted by Oklahoma law to spouses in jointly acquired property it is clear they do not include the traditional ownership rights in property. These rights such as descendible interest, right to control and disposition of property and vested interest are set out by the Supreme Court in United States v. Davis, supra, as factors that distinguish a marital division in satisfaction of a legal obligation from a division between co-owners. Since these traditional elements of co-ownership are lacking the fact that in making a decision the state courts speak as though they were dividing property between co-owners does not prevent the federal courts from saying that for tax purposes the division was in satisfaction of a marital obligation and thus taxable. [388 F.2d at 357–358.]

The Oklahoma Supreme Court 7 months later in *Collins v. Oklahoma Tax Commission*, 446 P.2d 290 (Okla. 1968) (hereinafter referred to as *Collins II*), considered precisely the same facts involving the same parties but the question was whether the transfer of stock was taxable under the State income tax code. The Oklahoma Tax Commission had found the transfer taxable based upon the rules announced by the Tenth Circuit in *Collins I*. However, the Oklahoma Supreme Court found that the Tenth Circuit opinion was not controlling on the State authority and disagreed with the Tenth Circuit's interpretation of Oklahoma law. The court found that under Oklahoma law, "The nature of the wife's interest is similar in conception to community property* * *, and is regarded as held by a species of common ownership." (446 P.2d at 295.) The court, in rejecting the applicability of the *Davis* case, stated that under Oklahoma law:

neither the actual investiture of title, a right to make present disposition of property, nor absence of a descendible interest are controlling. A wife has a vested interest in jointly acquired property of the marital community. [446 P.2d at 297.]

One month later, the Supreme Court, acting on Mr. Collin's petition for writ of certiorari from *Collins I*, vacated the judgment and remanded the case to the Court of Appeals for further consideration in light of the opinion of the Oklahoma Supreme Court in *Collins II. Collins v. Commissioner*, 393 U.S. 215 (1968) (hereinafter referred to as *Collins III*).

On remand, the Tenth Circuit in *Collins v. Commissioner*, 412 F.2d 211 (10th Cir. 1969) (hereinafter referred to as *Collins IV*) stated:

Having the benefit of an interpretation of state law on this very point, we must conclude that the stock transfer operated merely to finalize the extent of the wife's vested interest in property she and her husband held under "a species of common ownership." [412 F.2d at 212.]

The Tenth Circuit rejected respondent's argument that Federal criteria were established in *Davis*, e.g., right of control, descendible interest: "The [Supreme] Court merely discussed certain general characteristics of co-ownership in an attempt to determine whether the wife possessed the rights of a co-owner under state law." (412 F.2d at 212.) Because the

Oklahoma Supreme Court determined that the wife was a part owner, "there is no need to search state law for indications of other factors that might signify the nature of the wife's property interest." (412 F.2d at 212.)

In *Imel v. United States,* 375 F. Supp. 1102 (D. Colo. 1973), the United States District Court in Colorado was faced with the same issue of whether a transfer of appreciated property pursuant to a court-approved divorce settlement was taxable. The court said it had difficulty in determining the precise nature of the wife's interest in the property and, therefore, the court made a certification to the Colorado Supreme Court requesting its interpretation of Colorado law on this issue. The Colorado Supreme Court held that at the time the divorce action was filed, there vested in the wife her interest in the property in the name of the husband. In *In re Questions Submitted by United States District Court,* 517 P.2d 1331 (Colo. 1974), the court perceived no material distinction between the statutes in Colorado and those of Oklahoma considered in the *Collins* cases. The transfer was a recognition of a "species of common ownership" of the marital estate by the wife resembling a division of property between co-owners. The court recognized that:

During the marriage, and absent any divorce action, the parties have their separate property and, possibly subject to an exception or two, can dispose of it as he or she desires. * * *

However, at the time of the filing of the dissolution action in which the division of property will be later determined, a vesting takes place. [517 P.2d at 1335.]

The U.S. District Court concluded that *Davis* and *Collins IV,* when coupled with the Colorado Supreme Court's answers to the certified questions, mandated a judgment in favor of the taxpayer that the transfer was nontaxable. *Imel v. United States, supra* at 1118.

The Tenth Circuit in *Imel v. United States,* 523 F.2d 853 (10th Cir. 1975), affirmed the District Court concluding that *Davis* did not establish Federal criteria in determining the nature of the pre-transfer right in the property. It further stated:

In applying Delaware law in *Davis* the Court did not define the time when the interest of the wife had to vest. The Court refers to the interest of the

wife "[u]pon dissolution of the marriage." * * * Both the Oklahoma and Colorado courts said that the vesting occurred at the time of the filing of the divorce suit. [523 F.2d at 856.]

The court distinguished two other Tenth Circuit cases, *Wiles v. Commissioner*, 499 F.2d 255 (10th Cir. 1974), and *Hayutin v. Commissioner*, 508 F.2d 462 (10th Cir. 1974). In *Wiles*, the 10th Circuit held that under Kansas law, the wife had no vested rights at the time of transfer. In *Imel*, the court found *Wiles* was not controlling because it involved Kansas law as opposed to Colorado law. In *Hayutin*, the issue was whether 7 monthly payments made by the husband to the wife pursuant to a property settlement agreement were taxable to the wife under section 71 as alimony or whether they were nontaxable as a property division. The Tenth Circuit found that Colorado divorce laws did not make the wife a co-owner of the property but rather placed a burden on the husband's property, therefore, the payments were taxable as satisfaction of a marital obligation. In *Imel*, decided 9 months later, the Tenth Circuit distinguished *Hayutin* on the basis that it involved different Code provisions. The court concluded that in view of the Colorado Supreme Court's decision that the wife had a vested interest in the property at the time of the divorce action, the transfer was not taxable.

Respondent argues that to allow the State courts to define the interests of former spouses as "species of common ownership" bestows on States the power to override the Federal tax system. Respondent points to Kansas and Oregon statutes which were amended in reaction to adverse court decisions which found that the respective pre-amended State statutes did not confer a vested interest on the non-title-holding spouse. According to respondent, the subsequent amendments did not change the nature of the substantive property interests of the spouses but simply labeled the property interests as "species of common ownership" in order to avoid the application of *Davis*.

Even if we accepted respondent's interpretation of these statutes, it is irrelevant in the instant case which is not concerned with Kansas or Oregon law. Respondent has not argued, nor could he, that the pertinent Montana statutes, as discussed *infra*, were enacted in response to adverse court decisions. It is well-settled that States have the power to determine property interests. *United States v. Mitchell, supra.*

*Davis* and its progeny, such as the *Collins* cases and *Imel*, make it clear that an examination of State law is required. Respondent states that this Court and other courts have taken the approach of evaluating State law in light of the *Davis* criteria, citing *McKinney v. Commissioner*, 64 T.C. 263 (1975); *Eblen v. Commissioner*, T.C. Memo. 1982–448, affd. 736 F.2d 1100 (6th Cir. 1984); *Dunn v. Commissioner*, T.C. Memo. 1977–156; and *Forbes v. Massachusetts*, 472 F. Supp. 840 (D.Mass. 1979). However, these cases do look to State court determinations. Having done so, they conclude that the State does not recognize a property interest resembling co-ownership.

In *Cook v. Commissioner*, 80 T.C. 512 (1983), affd. without published opinion 742 F.2d 1431 (2d Cir. 1984), this Court considered Connecticut State court decisions and the testimony of the presiding divorce court judge and concluded that under the particular circumstances of that case, the transfer was more in the nature of a division of property. The transfer did not discharge any marital obligations—the transferor husband received nothing in exchange. The divorce court judge believed that the wife had an interest in the property which vested when the marriage dissolved. 80 T.C. at 528. In *Serianni v. Commissioner*, 80 T.C. 1090 (1983), on appeal (11th Cir., Feb. 13, 1984), this Court considered a transfer of stock to the wife which had been held in the husband's name alone. As part of its divorce decree, the divorce court in Florida awarded a special equity interest to the wife in the stock. Florida Supreme Court decisions had found that a special equity constitutes a vested equitable property right. This Court followed the opinion of the Fifth Circuit in *Bosch v. United States*, 590 F.2d 165 (5th Cir. 1979), which held that a special equity interest recognized by the Florida cases differed materially from the property interest involved in *Davis* and that an award of such an interest was not a taxable transaction. See *Mann v. Commissioner*, 74 T.C. 1249 (1980). A reading of these cases makes it clear that one must examine the State law at issue to determine whether there exists a vested property right at the dissolution of the marriage.[2]

---

[2] See also *Beard v. Commissioner*, 77 T.C. 1275, 1290 n. 9 (1981) (and cases cited therein); *Lewis v. Commissioner*, T.C. Memo. 1983–770; *Test v. Commissioner*, T.C. Memo. 1984–649.

Montana is not a community property State. Neither husband nor wife has any interest in the property of the other. Under section 40–2–202 of the Montana Code Annotated (1979):

All the property of a married person owned before marriage and that acquired afterwards is his individual property. The married person may, without consent, agreement, and signature of his spouse, convey and transfer his individual property, real or personal, including the fee simple title to real property, or execute a power of attorney for the conveyance and transfer thereof.

However, in a divorce proceeding, the court is required to equitably apportion the property under section 40–4–202 in effect in 1978 (as derived from the Uniform Marriage and Divorce Act):

*Disposition of property.* (1) In a proceeding for dissolution of a marriage, legal separation, or disposition of property following a decree of dissolution of marriage or legal separation by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court, without regard to marital misconduct, shall, and in a proceeding for legal separation may, finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; antenuptial agreement of the parties; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In disposing of property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property disposition serves as an alternative to maintenance arrangements.

(2) In a proceeding, the court may protect and promote the best interests of the children by setting aside a portion of the jointly and separately held

estates of the parties in a separate fund or trust for the support, mainte-
nance, education, and general welfare of any minor, dependent, or incompe-
tent children of the parties.[3]

Under the statute and decisions of the Montana Supreme
Court, the source of and title to marital property is irrelevant
to the division of such property upon dissolution of the
marriage. The courts have the power to divide the property on
an equitable basis regardless of where title lies.

The Montana Supreme Court in *In Re Marriage of Brown*,
587 P.2d 361 (Mont. 1978) stated (p. 365):

> The decisions of this Court following the enactment of the Uniform
> Marriage and Divorce Act declare that as a housewife, the wife acquires a
> vested interest in the property accumulated by the parties during the
> marriage.

In that case, the marital assets consisted of ranch property
which was inherited by the husband and was in his name,
alone. Glenda, his wife, was not employed outside the home
but had the homemaking and child raising responsibilities. In
addition, she would, as needed, help with the ranch work. The
court reviewed several Montana Supreme Court cases decided
prior to the Uniform Marriage and Divorce Act which found
that a wife's contribution as a homemaker and mother was
equivalent to the husband's financial contribution and con-
cluded:

> It is therefore obvious that Glenda acquired a vested interest in the major
> marital asset, the ranch property, regardless of its source and title. She did
> so by virtue of her fourteen years as mother, housewife and part-time ranch
> hand. [587 P.2d at 365.]

The Montana Supreme Court in *In Re Marriage of Jacobson*,
600 P.2d 1183 (Mont. 1979), affirmed the lower court's conclu-
sion that the parties had made equal contributions to the
marital estate and that the wife had acquired a vested one-half

---

[3]This statute was amended in 1983 to change the references to disposition of property to
references to division of property and to add two new subsections. These subsections provide, in
general, that each spouse is considered to have a common ownership in marital property that vests
immediately preceding the entry of the decree of dissolution and that the apportionment of
marital property is a division of common ownership for purposes of the property laws of the State
as well as the Federal income tax laws. Because the divorce proceeding in the instant case occurred
in 1978, we are concerned with the Montana statute, as quoted above, which was in effect during
that year.

interest in all property acquired by the parties during their marriage.

In *In Re Marriage of Johnsrud*, 572 P.2d 902 (Mont. 1977), the Montana Supreme Court concluded that the wife acquired a vested interest in the property accumulated by the parties during the marriage and that this interest vested upon dissolution of the marriage. The court recognized a need to distinguish between the property right in the marital estate and the need for maintenance. The divorce court must first equitably distribute the marital property and then look at the need for maintenance. It is the mandatory duty of the court to divide the property although the court has discretion as into what proportions the property will be divided.

These cases all conclude that under Montana law the wife acquires a vested interest in the property accumulated by the parties in marriage. In *Boucher v. Commissioner*, T.C. Memo. 1981–258, affd. 710 F.2d 507 (9th Cir. 1983), this Court was faced with the issue as to whether payments by the husband to his former wife pursuant to a divorce decree were deductible as alimony under section 215. In holding that the payment was a part of a property settlement, this Court examined Montana Supreme Court cases and concluded:

These cases clearly indicate that in Montana, which is not a community property state, a wife may gain rights to a portion of property legally titled in the name of her husband alone. These property interests will inure as a result of monetary and non-monetary contributions to the acquisition and maintenance of the property titled in the husband's name. [41 T.C.M. 1589, 1593, 50 P-H Memo T.C. par. 81,258, at 81–897.]

In *Boucher v. Commissioner*, 710 F.2d 507 (9th Cir. 1983), the Ninth Circuit, the Circuit to which this case is appealable, in affirming the judgment of this Court, held that the judgment of the Montana State court was controlling where it finally determined the character of the challenged payments after a contested hearing. In a situation where there is no contested hearing, the court noted:

Where the parties negotiate a property settlement agreement, which is thereafter incorporated into the divorce decree, without an independent determination by the court as to the nature of any payment set forth therein, this court has held that we must look to the laws of the state to resolve any dispute as to the character of any property described in the agreement. [710 F.2d at 512.]

Here, in the context of a transfer of appreciated property, we have looked to Montana State law to determine the property interest of the spouse. Respondent argues, citing *Hall v. Commissioner*, T.C. Memo. 1982–605, that *Boucher* dealt only with the issue of section 71 and that property rights which would support a property settlement in that context will not necessarily constitute co-ownership described in *Davis*. But we think that an examination of the Montana Supreme Court cases shows that Montana law confers the same property interest upon the former spouse as that involved in *Collins* and *Imel* and that this interest vests upon dissolution of the marriage.

Respondent argues that the vesting of the property interest is itself a taxable event. Respondent cites, however, no authority for this proposition. In *Imel v. Commissioner, supra*, the Tenth Circuit noted that *Davis* did not specify when the interest had to vest but that the Supreme Court referred to the interest "upon dissolution of marriage." We agree with petitioner that no sale or exchange takes place at vesting. Vesting is simply a recognition of the former spouse's contribution to property jointly acquired during marriage. There is no release of a personal obligation of the title-holding spouse.

Finally, respondent argues that based on the facts of this case, this transfer was in lieu of a support obligation and not in satisfaction of any property rights. In support of this contention, respondent cites the property settlement agreement, itself, which expressly provides that the transfer was made "in lieu of alimony, support, and maintenance."

The labels attached to payments provided for in a marital settlement agreement or a divorce decree are not controlling. *Beard v. Commissioner*, 77 T.C. 1275, 1283–1284 (1981); *Hesse v. Commissioner*, 60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975). The intent of the parties is an important consideration. *Schottenstein v. Commissioner*, 75 T.C. 451, 456 (1980). To discern this intent, one should look at the agreement in its entirety.

In the preamble of section IV, the agreement provides that—

The Parties are the owners of certain real and personal property which has been acquired both prior to and since their marriage through the efforts

of both Parties. * * * it is mutually agreed that the property of the Parties hereto shall be divided and finally distributed as follows: * * *

Thus, the parties intended in this section to divide and distribute the marital assets which include the Phillips Place. In addition, the divorce decree specifically made a finding that no support was required. The agreement and the decree are unambiguous that no support payments are contemplated.

Respondent points to the portion of the agreement which provides that in conjunction with the transfer of the ranch land, the former wife would lease her interest to petitioner for a 10-year period on a one-fourth crop-share basis with a minimum share guarantee of 3,000 bushels per year. Respondent relies on the following four factors listed in *DeSmyter v. Commissioner*, T.C. Memo. 1973–90, which would show that a property settlement, rather than support payments, was intended by the parties: (1) The fact that the payments are not related to the income of the payor spouse; (2) the presence of a fixed sum; (3) the continuation of the payments without regard to the death or remarriage of the payee spouse; and (4) the fact that the payee spouse did relinquish property interests in return for the payments. Respondent argues that the parties fail to meet factors (1), (2), and (4) in that the payments, i.e., the crop share, are related to petitioner's production of land; only a minimum amount of income is set forth, not a fixed sum; and that there is no mention that the former wife relinquished property interests.

Respondent's reliance on *DeSmyter* is misplaced. The issue in *DeSmyter* was whether cash payments made by the husband represented alimony or property settlement. Here, the issue is whether the transfer of an undivided one-half interest in a property is a taxable disposition. If one looks at the property transfer, it is impossible to apply the factors listed above because there are no "payments." Respondent appears to be referring to the crop share. However, these payments are not the issue in this case. These payments are in fact rental payments which are given in consideration of the lease. *England v. Commissioner*, 37 T.C. 1150 (1962).

In conclusion, the parties intended the transfer to be a division of property accumulated by their joint efforts during their marriage. Under Montana law, husband and wife at the dissolution of marriage have a vested interest in property

acquired during marriage regardless of which spouse holds title. Therefore, the transfer of this property resembles more a division between co-owners than a release of a legal obligation. Accordingly, the transfer is a nontaxable event.

Because of concessions,

*Decision will be entered under Rule 155.*

