Considered by MARQUETTE and MILLIKEN.

---

H. WILENSKY & SONS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5611.   Promulgated July 22, 1927.

> The owner of a building in poor condition entered into an agreement with a contractor to place the same in a tenantable condition. The petitioner contracted to purchase such building at an agreed price and in addition to pay to the vendor the amount which the latter was required to pay to the contractor for the work to be done. The contract to purchase was executed and the building was placed in tenantable condition by the contractor, the petitioner paying the vendor for the cost of such work. *Held*, that the petitioner is not entitled to deduct, as an ordinary and necessary expense, the amount representing the cost of the work done by the contractor.

*William M. Williams, Esq.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.

The present proceeding arises from the determination by the Commissioner of a deficiency of $4,942.20 in income and profits tax for 1919. It is alleged that the Commissioner committed error in holding that the petitioner is not entitled, in computing his net income for 1919, to a deduction of $10,837.15 claimed to have been expended during that year for repairs upon a building in Atlanta, Ga.

### FINDINGS OF FACT.

The petitioner is a Georgia corporation having its principal office at Nos. 38–42 West Alabama Street, Atlanta.

In 1919, E. H. Inman owned a certain brick building located at Nos. 23, 25, 27, Forsyth Street, Atlanta, Ga. The back part of this buidling was one story high with a basement. It was about 70 feet wide and 120 feet long and had a front entrance about 20 feet wide at No. 23. Until July, 1919, it had been leased as a cotton warehouse at a rental of $35 per month.

This warehouse was a very old building and had not been kept in repair. The roof was made of wood sheeting covered with felt treated with tar and gravel. The gravel had washed off; the felt covering had come away in many places, exposing the sheeting, which had in consequence rotted away. There was a monitor on the roof and skylights built to supply light to the building. The glass in these had been broken out and the sash had rotted away. The coping on top of the walls had disintegrated and the tin flashing had rusted out.

The main floor of the building was of wood. It was supported on wooden columns resting on a brick base capped with a stone. These brick had disintegrated, the columns rotted at the bottom, and the heavy weight of the cotton stored on the floor had caused it to sag. It was also damaged from water and a number of the joists were broken.

The basement floor was of wood and there was a wooden incline or ramp about 8 feet wide leading down to it. Water coming through the roof collected in the basement and both the floor and the incline were rotted out.

The brick in the walls were porous and in many places had disintegrated from action of the frost and water. At one place, where there was a back entrance to the warehouse, the foundation had given way and the wall had cracked and was in danger of collapse. The windows were broken out, the sash decayed, and the doors worn out.

About July, 1919, the tenant moved out of the warehouse and Inman entered into an agreement with Charles W. Bernhardt, a builder, to make alterations and repairs and put the building in tenantable condition, the work to be done on the basis of cost plus 10 per cent.

Thereafter, on August 22, 1919, the building was leased by Inman to one Barnwell for a garage, for a term of two years and three months, at a rental of $250 per month. This lease was executed pursuant to a prior oral agreement.

On August 7, 1919, Inman, through a local real estate firm, entered into a contract of sale of the property including the warehouse with H. Wilensky. This contract recited in part as follows:

PAYNE & McARTHUR

Real Estate and Renting Agents

Atlanta, Ga.

$1.000.00                                      ATLANTA, GA., *August 7th, 1919.*

RECEIVED OF H. Wilensky, One Thousand and no-100 Dollars as part purchase money on the following described property to-wit:—All that tract or parcel of land lying and being in the City of Atlanta, Georgia, size of lot Seventy (70) feet frontage on Forsyth Street by Two Hundred (200) feet, more or less, in

depth, upon which there is situate a two story brick store building known as numbers Twenty Three (23), Twenty Five (25) and Twenty Seven (27) South Forsyth Street, which on and for account of the owner and vendor we have this day sold to the purchaser above named subject to the titles being good, or made good within a reasonable time, for the sum of $105,000.00 Dollars, to be paid as follows:

Pay in cash the sum of $40,000.00 when trade is consummated.

Give notes for balance of purchase price to bear 6% interest from date and payable on or before one (1), two (2) and three (3) years, divided in three equal annual installments.

Said H. Wilensky agrees further to assume lease to be made by E. H. Inman with Claude Barnwell and said Wilensky agrees further to pay to said E. H. Inman costs of improvements contemplated under said lease with Claude Barnwell, which improvements are estimated to cost $5,000.00. Payne & McArthur are to receive no commission on the cost of said improvements. All dimension more or less.

PAYNE & MCARTHUR,

By ——— ———

I hereby agree to purchase the above described property on the terms and conditions above named this 7th day of August 1919.

(Signed)        H. WILENSKY,

Purchaser.

I hereby ratify and approve the above mentioned sale on the terms and conditions named and agree to pay PAYNE & MCARTHUR, on the date formal transfer is made, a commission of regular Dollars.

This 8th day of August 1919.

(Signed)        E. H. INMAN

Owner and Vendor.

On August 22, 1919, this contract was assigned by H. Wilensky to petitioner and the purchase was made by it pursuant to the terms of the contract. The lease with Barnwell was assigned to the petitioner by Inman.

The work done on the warehouse by the contractor was as follows: In places where the sheeting of the roof was rotted out, it was replaced; some of the rafters were renewed; the entire roof was scraped, leveled up, covered with three-ply felt and coated with tar and gravel. The monitor, which was about 40 feet long by 10 feet wide, was repaired, new frames were used to replace those rotted out, and new glass was put in the frames. New frames and glass were also put in the skylight and an additional skylight was built in. The tin flashing was all renewed and new down spouts were put on. The coping on the wall was renewed.

In places in the wall where the brick had disintegrated they were cut out and new brick and mortar put in. Some of these places covered 2 or 3 square feet. At the rear entrance where the wall had cracked and the foundation had given way, it was necessary to tear out approximately 20 feet of the wall and rebuild it. In all there were 35,500 new brick used to repair the walls. The doors were

replaced with new ones and new windows, sash and glass had to be put in on the main floor. The main floor in the building was taken up and replaced, some of the old flooring being used in the replacement. The broken joists were replaced and two or three new girders were put in. About three-fifths of the columns supporting the floor were replaced with new ones. The floor was jacked up, the brick bases renewed and new concrete bases were put under the columns.

The old wooden floor of the basement was taken out and a new concrete floor put in. The entrance leading into the building from the front was covered with a concrete floor. The incline or ramp leading to the basement was rebuilt. The worn out plumbing was replaced, and some new and additional plumbing was installed. The building had not been wired for electricity and new electric wiring was put in. The large doors at the front entrance having worn out, new doors were built and attached.

There had been an arch over the door and window at the back entrance. This was torn out and steel girders put in. Gratings were installed in the sidewalk to increase the ventilation of the basement. Doors and window sash were painted and the interior of the building was painted white to increase the light.

The effect of these repairs and improvements was to put the building in a tenantable condition. Its size was not increased and its general character remained the same.

The total cost for these repairs, improvements and replacements was $10,968.55. This cost was paid by Inman and he was reimbursed by petitioner in 1919 under the terms of the contract of sale.

The petitioner, in computing its net income, deducted as expense and repairs, $10,968.55. The entire amount was disallowed as a deduction by the Commissioner in computing the deficiency.

OPINION.

PHILLIPS: It is the contention of the petitioner that the amounts expended in 1919 upon the building which it purchased in that year were for repairs and are deductible as ordinary and necessary expenses in computing its taxable income. With this view we can not agree. As a part of its purchase, the petitioner acquired an old building in a very dilapidated condition, for which it agreed to pay $105,000. There was outstanding a contract for the restoration of the building, and as another part of the purchase the amount paid by the vendor under such contract was to be repaid him by the purchaser. The total amount so expended, whether paid to the vendor as a part of the purchase price or as a part of the payment to the contractor, represented the cost to the petitioner of the restored building. For $105,000, plus an additional amount to be

paid the contractor, the petitioner was to have, not the old building in its then condition, but a building in a usable condition. The situation here presented is entirely different from that of a taxpayer who repairs damage which has occurred to a building while he was the owner of it and who, after such repairs, has no greater asset than he originally owned.

*Decision will be entered for the respondent.*

Considered by MARQUETTE and MILLIKEN.