Charles J. WIEGAND, Jr. and Anne Catherine Wiegand, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Stephen A. ADASKAVICH and Janel Adaskavich, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. CV 75–4–GF, CV 75–23–GF.

United States District Court, D. Montana, Great Falls Division.

Nov. 24, 1976.

Church, Harris, Johnson & Williams, Great Falls, Mont., for plaintiffs.

Roger M. Olsen, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

May those who purchase farms, portions of which have been summer-fallowed at the vendor's[1] expense, deduct the reasonable value of the summer fallowing as ordinary business expenses? This case poses that question, and the answer is "no."

In the pretrial order it is agreed that:

Summer fallow is a method of farming utilized by some farmers in areas where the rate of rainfall or precipitation each year is insufficient to grow to maturity a crop each year upon the same land. The summer fallow method of farming involves the planting of a crop one year upon the land and in the next year following the first, the maintenance of the land in a fallow condition, i. e., cultivating the land and thereby maximizing the retention of moisture in the land so that the land can return a crop the third year. Consequently, it is necessary that the farmer till the soil during the year that it is being fallowed in order to kill the weeds, break the capillary action of moisture rising to the surface, and thereby preserve the moisture in the soil. By doing this, the farmer will generate greater yields of crops in alternate years than he would generate if he planted a crop each year on the land. Inasmuch as the purpose of this system of farming is to preserve moisture in the soil, to maximize the crop yield the next year, and to prepare the seed bed, unless the land is seeded the following year the moisture in the soil would be lost. Likewise, if a crop seeded to lands that have been summer fallowed is destroyed by drought, fire, et cetera, the value of the previous summer fallow is also lost.

Summer fallowing, though not absolutely essential to the production of crops, is as much a part of grain farming as is the preparation of the seed bed and the planting of the seed. As such it is an ordinary and necessary business expense deductible in the year in which the expense is paid or incurred. *See Union Stock Farms v. Commissioner of Internal Revenue,* 265 F.2d 712 (9th Cir. 1959).

Starting with this premise, plaintiffs urge that the land which is summer-fallowed is more valuable than the land which is not because it will grow a better crop in the next year; that plaintiffs paid more for the lands which they purchased than they would have paid had the lands not been

---

1. As to one tract, it was a lessee of the vendor who paid the expenses, but that is not important here.

summer-fallowed;[2] and that they should be allowed to take the fair value (agreed to be $10.00 per acre) of the summer fallowing as an "ordinary and necessary business expense."

The flaw in this contention is that the plaintiffs did not in fact pay the expenses of summer fallowing, and the payment of the fair value of the summer fallowing cannot, taxwise, be equated with the payment of the expenses of it. The law does not provide for the deduction of "fair value"; it provides for the deduction of "ordinary and necessary business expenses," and the two are not the same. If Farmer A uses his own horses, fed on home-grown grain and hay, to pull his own equipment to accomplish his summer fallowing, he incurs little if any deductible expense.[3] If Farmer B drives his own diesel-powered equipment, he would probably deduct the cost of oil, grease, and gasoline. If Farmer C let an independent contract for the summer fallowing and payed $10.00 per acre, then he would deduct that amount. The fair value in all cases might be the same, but the deductible costs in each case would be different.

Plaintiffs seek to justify the deduction on the theory that, when they bought the summer-fallowed farm, they bought a group of assets; that the several assets in the group may be segregated; and that separate tax consequences can be given to each separate asset. In support of this argument plaintiffs cite *Watson v. Commissioner of Internal Revenue,* 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232 (1953). There is no quarrel with the principle announced, but it doesn't fit here. A growing crop may be sold apart from the land or any right to possess the land.[4] Not so summer fallowing. It cannot be separated from the land nor sold apart from it.

The unreality of what plaintiffs seek to do may be illustrated in another way. It is axiomatic that deductions may not be taken twice. A well-maintained farm is worth more than one on which the weeds are thick, the fences sagging, and the irrigation ditches uncleaned. A farmer who sells a well-maintained farm deducts in the year of the sale all of his "ordinary and necessary business expenses," including his costs of repair and maintenance. It would not occur to him that the right to deduct these costs would be lost to him on a sale and transferred to the buyer for his tax benefit. There is nothing in the tax law to indicate that Congress thought so.

The fact is that the assets which these plaintiffs acquired were farms, not farms plus an assorted bundle of tax goodies.[5]

This opinion constitutes the findings of fact and conclusions of law of the court.

Let judgment be entered denying the plaintiffs all relief.

---

**2.** The contract documents do not allocate any amount of the purchase price to the cost of summer fallowing, but that fact is not important to this decision.

**3.** Farmer A would, of course, take depreciation on his horses and equipment and would deduct the general expense of running the farm, but those deductions would not be reflected as a cost of summer fallowing and might not change whether summer fallowing were done or not.

**4.** See Montana Commercial Code, R.C.M.1947, § 87A–2–105 and § 87A–2–107. These sections are not cited as controlling federal tax law but rather to indicate that, in the contemplation of people and of the law, growing crops may be and are dealt with apart from the land.

**5.** An interesting application of plaintiffs' theory appears in connection with one of the Adaskavich farms. It had been owned by Robinson (Trustee for Knowles) and by him leased to Parley Stokes. The lease expired in 1972. Adaskavich purchased the land in 1968 subject to the lease. Stokes paid the expenses of the 1968 summer fallowing, and, of course, got the benefit of it in his 1969 crop. Although Plaintiff Adaskavich did not pay the cost of the summer fallowing, nor did he get the benefit of it, either by additional crop or increased rent, he still seeks to deduct its fair value.