BENNETT LAND COMPANY (A WASHINGTON CORPORATION), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3924–75.     Filed September 13, 1978.

*Wesley A. Nuxoll,* for the petitioner.
*Thomas M. Tomashek,* for the respondent.

IRWIN, *Judge:* Respondent determined a deficiency of $1,210 in petitioner's corporate income tax return for the fiscal year ending August 31, 1973.

The only issue presented for our consideration is whether a purchaser of farmland may deduct the portion of the purchase

price attributable to the value of summer fallow as a trade or business expense under section 162.[1]

### FINDINGS OF FACT

Most of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner is a corporation which had its principal place of business in Colfax, Wash., at the time it filed its petition. Petitioner is a cash basis taxpayer and filed corporate income tax returns for the fiscal years ending August 31, 1971, through August 31, 1973, with the Internal Revenue Service Center at Ogden, Utah.

Pursuant to an executory contract of sale entered into on September 30, 1970, petitioner purchased from Henry and Matilda Schmick a 408-acre farm in the area of Colfax, Wash. The total purchase price was $220,000; this total was specifically allocated in the contract between the land ($156,200), eight separately listed improvements and "summerfallow" ($5,500).

At the time of petitioner's purchase of the farm approximately 200 acres were in summer fallow. Summer fallowing is a method of farming utilized by some farmers in areas where the annual rate of rainfall or precipitation is insufficient to grow a crop to maturity each year on the same land. Therefore, crops are planted every other year rather than annually. During the year that a crop is not planted, the land is maintained in a fallow condition by cultivation. This process consists of a series of operations which are part of preparing the seedbed for the next crop to be grown. The farmer must till the soil during the year that it is being fallowed in order to kill the weeds and break the capillary action of moisture rising to the surface, thus preventing loss of moisture in the soil. This maximizes the crop yield the following year and a greater yield of crops is produced than if the farmer had planted crops each year. The value of the summer fallow is fully utilized and exhausted in the production of the crop when the crop is harvested. If a crop seeded on land that has been summer fallowed is destroyed by drought, fire, etc., then the value of the previous summer fallow is also lost.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the taxable years in issue.

The costs for summer fallow include the costs of plowing, harrowing, and weeding the land.

The Schmicks had leased the farmland to their son-in-law, Reuben Zimmermann (hereafter Zimmermann), for several years prior to its sale. Zimmermann completed all of the work in connection with the summer fallow prior to the sale and had been paid $1,800 by the Schmicks for this work. Normally, if a tenant has leased farmland and summer-fallowed it, and then transfers the lease, he will be paid by either the landlord or new tenant for the value of the fallow. The land in summer fallow on the date of purchase was seeded to winter wheat by petitioner immediately after the purchase, and the wheat was harvested in July 1971.

The executory contract of sale allocated $156,200 of the purchase price to the land and an additional $5,500 to the summer fallow representing the increase in fair market value of the land attributable to the summer fallow. Petitioner paid $44,000 of the purchase price during its taxable year ending August 31, 1971, representing the downpayment. Subsequent installment payments of $11,733.33 have been made on each November 1, beginning on November 1, 1971.

On Schedule F of its U.S. Corporation Income Tax Return for the taxable year ending August 31, 1971, petitioner deducted, as a "growing crop" expense, the entire $5,500 allocated in the contract to the summer fallow. The deduction was disallowed on audit, causing a corresponding reduction in an investment credit carryover for the years ended August 31, 1972, and August 31, 1973. Consequently, a deficiency was determined with respect to the year ending August 31, 1973.

Petitioner also deducted all expenses incurred by it with respect to the crop of winter wheat it planted on the summer-fallowed acreage immediately after the purchase from the Schmicks on its corporation income tax return for the taxable year ending August 31, 1971.

## OPINION

Petitioner contends that the amount paid for the value of summer fallow is an ordinary and necessary business expense attributable to the next crop to be grown on the land and deductible under section 162 by the harvester of that crop. Respondent contends that the portion of the purchase price

attributable to the value of the summer fallow is an amount paid by the purchaser for the farmland as part of the value of land and thus represents a capital investment in the land. Respondent has previously stated this position in Rev. Rul. 71–348, 1971–2 C.B. 122. If we determine that the cost of the summer fallow is deductible by petitioner, respondent contends that only that portion of the installment payment attributable to the fallow should be allowed as a deduction in the year of payment.[2]

In *Wiegand v. United States*, 422 F. Supp. 276 (D. Mont. 1976), affd. in an unpublished opinion (9th Cir., Nov. 16, 1977),[3] the District Court of Montana faced the precise issue before us and resolved it in favor of respondent. We agree with that court's resolution.

Initially, we agree with petitioner that the cost of summer-fallowing is an ordinary and necessary expense deductible under section 162 and section 1.162–12, Income Tax Regs., by the farmer who incurred the summer-fallowing expenses. *Wiegand v. United States, supra*. Nor do we believe that respondent contends otherwise. We also agree with petitioner that land which is summer-fallowed is more valuable than land which is not; that petitioner paid more for the land than it would have paid had the land not been summer-fallowed; and that the $5,500 allocated to the summer fallow is a reasonable estimate of the difference in fair market value between the value of the land as summer-fallowed and the value of the land as not summer-fallowed.

However, the situation here is one in which petitioner purchased land already summer-fallowed and then planted and harvested a crop. The expense incurred in summer-fallowing had already been paid by Schmick to Zimmermann. Although this expense was deductible by Schmick, it does not follow that it is deductible by petitioner. The simple fact is that petitioner did not incur the expense, Schmick did. The fact that had Schmick not incurred the expense, petitioner would have had to summer-fallow the land (assuming there would still have been time to do

---

[2]$5,500 (or 2.5 percent) of the $220,000 total purchase price was allocated to the summer fallow. Therefore, respondent argues that 2.5 percent of the downpayment and of each installment payment should be allocated to the summer fallow and deductible only in the years payment is made. Petitioner deducted the full $5,500 in the year of purchase.

[3]Although appeal in this case would lie to the Ninth Circuit, the rule of *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), does not apply since affirmance was by unpublished opinion. *Ruegsegger v. Commissioner*, 68 T.C. 463 (1977).

so after the sale) is irrelevant. The expense incurred was Schmick's current operating expense, not petitioner's, and the general rule is that a taxpayer may not deduct the expenses of another taxpayer. *Deputy v. duPont*, 308 U.S. 488 (1940); *Welch v. Helvering*, 290 U.S. 111 (1933).[4]

Although the increase in value of the land produced by summer-fallowing may be ascertained, the summer fallow is not itself an asset that may be segregated from land. It cannot be sold nor leased apart from the land or any right to possess the land. The expense incurred in summer-fallowing is simply a current operating expense of the farming business of the owner. A broad application of the principle urged upon us by petitioner would permit a purchaser of a business to deduct the prior operating expenses of the business purchased which were already properly deducted by the prior owner. For example, where the owner of an apartment building incurs a repair expense he is entitled to a current deduction under section 162. If he sells the building the following day, it is clear that he does not have to recapture the deduction under tax benefit principles. Nor can the purchaser deduct the increase in the value of the apartment building due to the repairs. This is so even though the value of those repairs will be exhausted in the purchaser's current year's operations. *H. Wilensky & Sons Co. v. Commissioner*, 7 B.T.A. 693 (1927). The repairs increase the value of the building and cannot be separated from it; thus, the purchaser must include that part of the purchase price attributable to the increase in the building's value as part of his basis in the building. Had the building been purchased before the repairs were made and the purchaser made the repairs the following day, he would have been entitled to a deduction for the cost thereof.[5]

---

[4]Respondent relies on the well-settled proposition that an expenditure of a preceding owner of property which has accrued, but which is paid by one acquiring that property, becomes part of the basis of the property acquired and may not be deducted when paid by the acquirer of that property, regardless of what would be the tax character of the expenditure to the prior owner. *M. Buten & Sons, Inc. v. Commissioner*, T.C. Memo. 1972–44 and cases cited therein. Petitioner attempts to distinguish these cases by noting that in all the cases cited, the purchaser was acquiring the business and the assumed liabilities represented merely a means of payment for the business. Petitioner contends that in this instance, it was in effect reimbursing the prior owner for operating expenses which it would otherwise have incurred in planting crops. We agree with petitioner that the case at bar is distinguishable from those cases for we do not believe that petitioner acquired any liability of the seller.

[5]This is to be distinguished from those situations in which the assets may be segregated, such as in the case of supplies purchased by a business and whose cost was properly deducted as an ordinary and

Accordingly, we hold that the portion of the purchase price attributable to the value of the summer fallow is an amount paid by the purchaser for the farmland as part of the value of land and is a capital investment in the land, and not deductible by the purchaser.

*Decision will be entered for the respondent.*

---

necessary business expense under sec. 162 in the year of purchase. On the sale of the business, the seller would be required to include in income under the tax benefit rule, as recoupment of expense charges, the amounts previously deducted when the supplies were acquired. The purchaser, if engaged in a trade or business, would be entitled to deduct the cost of the supplies purchased as an ordinary and necessary business expense. See *Anders v. Commissioner*, 48 T.C. 815 (1967), revd. 414 F.2d 1283 (10th Cir. 1969), cert. denied 396 U.S. 958 (1969), rehearing denied 396 U.S. 1031 (1970).