# United States Tax Court

T.C. Memo. 2025-100

THE DAVID AND BARBARA GREEN 1993 DYNASTY TRUST,
MART D. GREEN, TRUSTEE, ET AL.,[1]
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket Nos. 19631-19, 19632-19, 19633-19, 19634-19, 19635-19.

Filed October 2, 2025.

————————

Ps are electing small business trusts and individuals who own shares of S, an S corporation. S's 2011 and 2012 federal income tax returns claimed charitable contribution deductions for donations of numerous artifacts. Each return included Form 8283, Noncash Charitable Contributions, which had been prepared by S. Each Form 8283 included a description of the group of contributed artifacts and reported an aggregate basis and fair market value and a range of acquisition dates for the group. Each return also included portions of an appraisal report describing and valuing each artifact. S used the services of an accounting firm to review each return before filing.

Each P deducted, on its 2011 and 2012 federal income tax returns, its pro rata share of the fair market

[1] The following cases are consolidated herewith: Green Stewardship Trust f.k.a. Green Management Trust and Green Family Management Trust, David M. Green, Barbara A. Green, Steven T. Green, Mart D. Green, and Darsee Lett, Co-Trustees, Docket No. 19632-19; Green Family Delta Trust, Steven T. Green and Mart D. Green, Co-Trustees, Docket No. 19633-19; Mart D. Green and Diana K. Green, Docket No. 19634-19; and Steven T. Green and Jackie D. Green, Docket No. 19635-19.

[*2]   value of the artifacts reported on S's information return for the same year.  R disallowed all the deductions in Notices of Deficiency issued to each P and determined against each P a gross valuation misstatement penalty under I.R.C. § 6662(a) and (h) or, in the alternative, a substantial valuation misstatement penalty under I.R.C. § 6662(a) and (b)(3).

The IRS examiner who proposed the valuation misstatement penalties issued a notice to S on November 18, 2015, concerning the deduction disallowance and penalties.  The immediate supervisor of the examiner had signed a workpaper on October 21, 2015, approving the examiner's proposed penalties as to S's 2011 and 2012 taxable years.

The parties filed Motions for Partial Summary Judgment pertaining to the determined penalties.

*Held*: R properly obtained supervisory approval of the determined penalties as required by I.R.C. § 6751(b).

*Held, further*, a dispute of material fact exists regarding whether reasonable cause existed with respect to certain of the determined penalties.

*Held, further*, R's Motion will be granted in part and denied in part.  Ps' Motion will be denied.

————————

*Kurt M. Rupert*, *Michael A. Furlong*, *Judith Leslie LaReau*, *Charles E. Geister III*, and *Len Burford Cason*, for petitioners.

*Vassiliki Economides Farrior*, *Kristen I. Nygren*, *William F. Castor*, *Daniel J. Lavassar*, *Henry C. Bonney*, and *Naseem Jehan Khan*, for respondent in docket No. 19631-19.

*Vassiliki Economides Farrior*, *Kristen I. Nygren*, *William F. Castor*, *Daniel J. Lavassar*, and *Henry C. Bonney*, for respondent in docket Nos. 19632-19, 19633-19, 19634-19, and 19635-19.

**[\*3]**                    MEMORANDUM OPINION

TORO, *Judge*: These consolidated deficiency cases involve three electing small business trusts[2]—the David and Barbara Green 1993 Dynasty Trust, the Green Stewardship Trust, and the Green Family Delta Trust (together, Trusts)—and two married couples—Mart D. and Diana K. Green as well as Steven T. and Jackie D. Green—who own shares of Hobby Lobby Stores, Inc. (Hobby Lobby). Hobby Lobby, an arts and crafts retailer, is an S corporation within the meaning of section 1361.[3]

In 2011 and 2012, Hobby Lobby donated to the Museum of the Bible, Inc. (Museum), a section 501(c)(3) organization, more than 1,200 Hebrew biblical scrolls, biblical manuscripts in Hebrew, Greek, Latin, and Aramaic, and printed books and Bibles dating between 1455 and 1782. For convenience, we will refer to the property donated to the Museum as the Contributed Artifacts.

On its income tax returns for 2011 and 2012 (years at issue), Hobby Lobby claimed noncash charitable contribution deductions of $23,038,000 and $61,633,000 with respect to the Contributed Artifacts. Consistent with the rules governing S corporations and their shareholders, the Trusts and the Greens reported their ratable shares of the deductions on their federal income tax returns.[4]

The Commissioner examined Hobby Lobby's returns and determined that the noncash charitable contribution deductions should

---

[2] In tax parlance, electing small business trusts are commonly referred to as "ESBTs," and we follow that convention for convenience.

[3] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

Subchapter S of chapter 1 of the Code governs the tax treatment of S corporations. Although subchapter S generally restricts an S corporation's shareholders to individuals, it allows certain types of trusts to hold S corporation shares, including ESBTs and trusts treated under subchapter J, part I, subpart E, as wholly owned by individuals who are citizens or residents of the United States. *See* I.R.C. § 1361(b)(1)(B), (c)(2)(A)(i), (v).

[4] Gifts by an S corporation to a section 501(c)(3) organization may be charitable contributions within the meaning of section 170(c) that are deductible to the shareholders of the S corporation under section 170(a) or section 642(c)(1).

[*4] be disallowed in their entirety.  The Commissioner also determined that certain valuation misstatement penalties apply.  The Commissioner issued Notices of Deficiency to the Trusts and the Greens reflecting these determinations.  Petitions for redetermination were timely filed in this Court.

Now before the Court are two Motions for Partial Summary Judgment relating to the penalties, one filed by the Commissioner and the other by the Trusts and the Greens.[5]

For his part, the Commissioner asks the Court to hold that he obtained supervisory approval of the "initial determination" of the penalties as required by section 6751(b).  The Commissioner also asks us to hold that "the Court may impose penalties for gross valuation misstatement under [section 6662(h)] and, in the alternative, substantial valuation misstatement under [section 6662(e)] to the extent [Hobby Lobby] actually [over]valued the [Contributed Artifacts]." Resp't's Mot. for Partial Summ. J. 1 (Doc. 78).

For their part, the Trusts and the Greens ask us to hold that no penalties may be imposed because (1) the Commissioner did not comply with the approval requirement of section 6751(b); (2) the Commissioner's penalty determinations failed to value each of the Contributed Artifacts as required by Treasury Regulation § 1.6662-5(f)(1); and (3) the Commissioner failed to properly calculate and notify the Trusts and the Greens of the amounts of the penalties, thereby violating section 6751(a).

As we explain below, we conclude that the Commissioner complied with the supervisory approval requirements of section 6751(b).  We will therefore grant his Motion in part.  But we will deny the remainder of his Motion and will also deny the Trusts' and the Greens' Motion.

*Background*

We derive the following background from the Stipulations of Facts with accompanying Exhibits, which are incorporated by reference, and the Motion papers.  The background is set forth solely to rule on the

[5] In a separate opinion filed concurrently herewith, *Green 1993 Dynasty Trust v. Commissioner*, Nos. 19631-19, et al., 165 T.C. (Oct. 2, 2025), the Court addresses four other Motions relating to certain substantiation issues and the rules governing charitable contribution deductions for trusts.

**[*5]** Motions and not as findings of fact for these cases. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The parties have stipulated that the U.S. Court of Appeals for the Tenth Circuit is the appellate venue for these cases. *See* I.R.C. § 7482(b)(2).

I.     *Hobby Lobby Ownership*

The Trusts and the Greens owned more than 99% of Hobby Lobby during the years at issue. The following chart shows their respective shares of ownership.

| *Shareholder* | *Percentage Ownership* |
|---|---|
| The David and Barbara Green 1993 Dynasty Trust | 88.2267% |
| The Green Stewardship Trust | 0.1392% |
| The Green Family Delta Trust | 8.1839% |
| Mart D. and Diana K. Green (through the Mart D. Green Succession Trust) | 1.0323% |
| Steven T. and Jackie D. Green (through the Steven T. Green Succession Trust) | 2.0654% |
| Nonparty | 0.3525% |
| Total | 100% |

II.     *The Trusts' and the Greens' Deductions*

The Commissioner challenges deductions that the Trusts and the Greens claimed on their federal income tax returns for the years at issue for Hobby Lobby's contributions of the Contributed Artifacts to the Museum. For each year at issue, the Trusts and the Greens deducted on their returns their pro rata shares of the amounts reported by Hobby Lobby as the fair market values of the Contributed Artifacts.[6]

---

[6] An S corporation reports items, including deductions, to the Internal Revenue Service (IRS) and its shareholders on an information return, Form 1120–S, U.S. Income Tax Return for an S Corporation. *See* I.R.C. § 6037(a) and (b); Treas. Reg.

**[*6]** III.    *Hobby Lobby's Forms 8283*

A.    *Taxable Year 2011*

Hobby Lobby attached Form 8283, Noncash Charitable Contributions (Rev. December 2006), to its 2011 Form 1120–S. Hobby Lobby used the services of accounting firm Grant Thornton LLP to review its work papers and Form 1120–S, including the Form 8283, before the return's filing.

Hobby Lobby reported on the Form 8283 that it contributed to the Museum "431 Manuscript Hebrew Biblical Scrolls: Medieval, Renaissance, Enlightenment, & modern: 15th Century to 20th Century. Europe, Africa, and Middle East." Doc. 23, Ex. 99-J. On the same form, Hobby Lobby reported that it purchased the Contributed Artifacts between December 2009 and September 2010, that they had an aggregate basis of $1,753,432 and an aggregate appraised fair market value of $23,038,000 at the time of the contribution, and that they were contributed on December 30, 2011.

Hobby Lobby also attached to the 2011 Form 1120–S sections of an appraisal report by Lee Raffaele Biondi of Biondi Rare Books and Manuscripts, which described and valued each scroll as of December 30, 2011.[7] The appraisal report indicated that the value per item ranged from $1,000 to $295,000. It did not identify, however, the acquisition date or basis for the individual scrolls. Mr. Biondi signed the Form 8283 declaration of appraiser on or about July 31, 2012.

B.    *Taxable Year 2012*

Hobby Lobby attached Form 8283 (Rev. December 2012) to its 2012 Form 1120–S. As it did for 2011, Hobby Lobby used the services of Grant Thornton to review its work papers and Form 1120–S, including the Form 8283, before the return's filing.

---

§ 1.1366-1(a)(1). The shareholders take these items into account on their own returns. *See* I.R.C. § 1366(a). The Trusts claimed their own shares of the deductions, and the Greens claimed successor trusts' shares of the deductions. Each deducted the product of its Hobby Lobby ownership percentage and Hobby Lobby's total claimed charitable contribution deduction. The total claimed deduction was based on the appraised fair market value of the Contributed Artifacts that Hobby Lobby reported.

[7] Specifically, Hobby Lobby excluded sections 4, 5, and 6 of the appraisal report. Those sections included background information on Sefer Torah scrolls, regional histories of Jewish cultural centers, and the Hebrew Alphabet, respectively.

**[*7]** Hobby Lobby reported on the Form 8283 that it contributed "[o]ver 800 Ancient & Medieval Biblical Manuscripts in Hebrew, Greek, Latin, and Aramaic, and printed books and Bibles (1455-1782)." Doc. 23, Ex. 101-J. Hobby Lobby also reported that it purchased the Contributed Artifacts from December 2008 to August 2011, that they had an aggregate basis of $18,749,758 and an aggregate appraised fair market value of $61,633,000 at the time of the contribution, and that they were contributed on December 31, 2012.

As it had for 2011, Hobby Lobby attached sections of an appraisal report from Mr. Biondi to the information return that described and valued each artifact as of December 31, 2012.[8] The appraisal report set forth a wide value range for the items donated in 2012, with several items identified as having zero value while multiple others were valued in the millions of dollars, up to a high of $9,500,000.

In connection with the 2012 appraisal report, Mr. Biondi prepared a Uniform Standards of Professional Appraisal Practice certification, in which he explained that he had inspected some of the Contributed Artifacts "in the company of Michael Thompson and Carol Sandberg" of Michael R. Thompson Rare Books, Doc. 19, Ex. 44-J, at 33, and that Mr. Thompson and Ms. Sandberg had provided "personal property valuation assistance," *id.* at 35. Mr. Biondi further explained in the certification that "the Appraisal Report is solely mine— this is not a joint appraisal—and all information and valuation opinions herein are strictly my responsibility." *Id.* at 35. The valuations of several of the Contributed Artifacts in the report are accompanied, however, by a statement signed by Mr. Thompson and Ms. Sandberg that they "conclude and express [the] Fair Market Value" of the relevant artifact or that they "concur with Mr. Biondi's Fair Market Value opinion." The appraisal report describes the credentials of Mr. Biondi, Mr. Thompson, and Ms. Sandberg. Mr. Biondi signed the Form 8283 declaration of appraiser on or about August 15, 2013, but the return did not include a declaration of appraiser from Mr. Thompson or Ms. Sandberg.

IV.     *Approval of Penalties and Notices of Deficiency*

The Commissioner examined Hobby Lobby's returns for the years at issue. On September 10, 2015, Revenue Agent Yvonne K. Faulkenberry issued to Hobby Lobby Form 5701, Notice of Proposed

---

[8] Hobby Lobby omitted the same sections from the 2012 appraisal report as it had from the 2011 appraisal report.

[*8] Adjustment (NOPA), for each year. She attached to each NOPA Form 886–A, Explanation of Items, explaining that the Commissioner planned to assert penalties because Hobby Lobby had overstated the values of the Contributed Artifacts. The first page of each NOPA carried the following statement: "Based on the information we now have available and our discussions with you, we believe the proposed adjustment listed below should be included in the revenue agent's report. However, if you have additional information that would alter or reverse this proposal, please furnish this information as soon as possible." Each NOPA included the electronic signature dated September 9, 2015, of Jan C. Van Camp, RA Faulkenberry's immediate supervisor.

An additional document in the record—an untitled workpaper pertaining to Hobby Lobby's 2011 and 2012 taxable years (Workpaper)—also addresses the penalty issue. The Workpaper bears Ms. Van Camp's handwritten signature, dated October 21, 2015. The Workpaper lists several penalties and a "YES" or a "NO" box for each penalty. The "YES" box is checked for "Substantial Valuation Misstatement" and "Gross Valuation Misstatement." Ms. Van Camp submitted a Declaration in support of the Commissioner's Motion. In it, she explains that she was aware that Hobby Lobby was an S corporation when she signed the Workpaper and that she approved RA Faulkenberry's penalty determinations by applying her signature.

On November 18, 2015, RA Faulkenberry issued to Hobby Lobby Form 4605–A, Examination Changes – Partnerships, Fiduciaries, S Corporations, and Interest Charge Domestic International Sales Corporations (Unagreed and Accepted Agreed), outlining the adjustments in these cases and stating that the "[v]aluation misstatement accuracy related penalty under IRC 6662 will be assessed." The Form 4605–A accompanied Letter 921, which explained that if the taxpayers disagreed with the adjustments, they "should also request an Appeals conference."

Discussions with the IRS Office of Appeals[9] did not resolve the matter. Thereafter, on August 7, 2019, the Commissioner issued Notices of Deficiency to the Trusts and the Greens. The Notices of Deficiency determined that no deductions should be allowed with respect to the

_____

[9] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).

**[*9]** Contributed Artifacts because "the requirements of section 170 [have not] been satisfied."[10]   The Notices also determined gross valuation misstatement penalties under section 6662(a), (b)(3), and (h) or, in the alternative, substantial valuation misstatement penalties under section 6662(a), (b)(3), and (e).   In determining that gross valuation misstatement penalties should apply, in light of the full disallowance of the contributions, the Commissioner assumed that the value of each Contributed Artifact was zero.

## V.      *Petitions and Motions*

Petitions seeking redetermination of the deficiencies and penalties were timely filed in our Court.  The Motions described above followed in due course.

## *Discussion*

## I.      *Partial Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly and unnecessary trials.  *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001).  The Court may grant partial summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[10] To illustrate, Form 886–A attached to the Notice of Deficiency issued to The David and Barbra Green 1993 Dynasty Trust stated as follows:

> We adjusted your distributive share of flow-through noncash charitable contributions in accordance with the examination results of the S-Corporation return of Hobby Lobby Stores, Inc.  It has not been established that all the requirements of section 170 of the Internal Revenue Code have been satisfied for these claimed noncash contributions of property.  Accordingly, your taxable income is increased $20,325,736.26 and $54,376,946.91 in 2011 and 2012, respectively.

> Alternatively, if it is determined that all the requirements of section 170 of the Internal Revenue Code have been satisfied for all or a portion of these claimed noncash charitable contributions of property which flowed from your S-Corporation return of Hobby Lobby Stores, Inc., we have determined that your total allowable deduction, based on your distributive share of the fair market value of the contributed property is $2,126,130.00 and $16,542,349.00 in 2011 and 2012, respectively.

Doc. 19, Ex. 1-J, at 8.  The Forms 886–A attached to the other Notices of Deficiency contained similar terms.

**[\*10]** Rule 121(a)(1) and (2); *Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 238 (2002); *see also Take v. Commissioner*, 82 T.C. 630, 633 (1984) (explaining that if both parties move for summary judgment or partial summary judgment, this rule applies to each motion), *aff'd*, 804 F.2d 553 (9th Cir. 1986). In considering the Motions, we construe factual materials and inferences drawn from them in the light most favorable to each nonmoving party. *See Sundstrand Corp.*, 98 T.C. at 520.

The party moving for summary judgment bears the burden of showing an absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the burden of persuasion at trial would be on the nonmoving party, the movant may carry this burden by demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.*; *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the movant makes this showing, the burden shifts to the nonmovant to set forth specific facts showing there is a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Tesone*, 942 F.3d at 994. The nonmoving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing there is a dispute. Rule 121(d); *Sundstrand Corp.*, 98 T.C. at 520. If the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is warranted. *Celotex Corp.*, 477 U.S. at 322.

II. *Overview of Valuation Penalties Regime*

A. *Imposition of Penalties*

In general, section 6662(a) and (b)(3) imposes an accuracy-related penalty of 20% of the portion of any underpayment attributable to a substantial valuation misstatement. Under section 6662(e)(1)(A), a substantial valuation misstatement exists if the value of any property (or the adjusted basis of any property) claimed on a federal income tax return is 150% or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be).[11]

Section 6662(h) increases the penalty to 40% of the underpayment for a *gross* valuation misstatement. The gross valuation

---

[11] No penalty is imposed under section 6662(b)(3), however, unless the portion of the underpayment attributable to substantial valuation misstatements exceeds $5,000. I.R.C. § 6662(e)(2).

**[*11]** penalty exists if the claimed value or adjusted basis is 200% or more of the actual value or adjusted basis. I.R.C. § 6662(h)(2)(A)(i).

> B. *Reasonable Cause Defense and Exceptions*

The Code also provides a defense with respect to certain of the valuation misstatement penalties. Under section 6664(c)(1), "[n]o penalty shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

But, with respect to an underpayment attributable to a substantial valuation misstatement of charitable contribution property, the defense applies only if (1) the claimed value of the property was based on a qualified appraisal made by a qualified appraiser and (2) in addition to obtaining such an appraisal, the taxpayer made a good faith investigation of the value of the contributed property. I.R.C. § 6664(c)(3).

And the Code turns the defense off altogether with respect to an underpayment attributable to a gross valuation misstatement of charitable deduction property. I.R.C. § 6664(c)(3); *see also Chandler v. Commissioner*, 142 T.C. 279, 293 (2014) ("The [Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780,] . . . eliminated the reasonable cause exception for gross valuation misstatements of charitable contribution property.").

III. *Supervisory Approval under Section 6751(b)*

Section 6751(b) prohibits the assessment of the penalties asserted in these cases "unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." Our Court has interpreted section 6751(b) to require supervisory approval before the IRS Examination Division formally notifies the taxpayer in writing that it has completed its work and made an unequivocal decision to assert penalties. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 14–15 (2020).[12]

---

[12] In a nonprecedential opinion, the Tenth Circuit set a lower bar for section 6751(b) compliance, holding the requirements would be met so long as written

**[\*12]** The Commissioner contends he complied with the requirements of section 6751(b) and asks us so to hold. The Trusts and the Greens disagree. We conclude the Commissioner has the better of the argument, as we explain below.

A. *NOPAs*

The Trusts and the Greens insist that section 6751(b) required RA Faulkenberry to obtain supervisory approval of the penalties no later than the date she sent the NOPAs and maintain that Ms. Van Camp's electronic signatures on the NOPAs do not satisfy this requirement. They note that Ms. Van Camp does not attest in her Declaration that she personally approved the penalties by signing the NOPAs, and they point the Court to a case in which the Commissioner conceded that the revenue agent's immediate supervisor did not approve penalties asserted in 30-day letters bearing his signature until after the IRS sent the letters. *See Berry v. Commissioner*, T.C. Memo. 2021-42, at \*22.

This argument overlooks the difference between the NOPAs that the Trusts and the Greens received and the 30-day letters in *Berry*. A 30-day letter notifies the taxpayer that the Examination Division has completed its work. It comes with a revenue agent report explaining the adjustments the Examination Division proposes and gives the taxpayer the opportunity to protest the adjustments before the IRS Independent Office of Appeals. *See Belair Woods*, 154 T.C. at 8 (reviewing the analysis of 30-day letters in *Clay v. Commissioner*, 152 T.C. 223, 249 (2019), *aff'd*, 990 F.3d 1296 (11th Cir. 2021), and analogizing to 60-day letters); Statement of Procedural Rules, 26 C.F.R. § 601.105(d)(1). The NOPAs that the Trusts and the Greens received, on the other hand, indicated that the Examination Division had not completed its work and invited them to submit additional information that might alter or reverse the Examination Division's proposal. We have consistently held that such a communication does not embody an "initial determination." *See, e.g.*, *Braen v. Commissioner*, T.C. Memo. 2023-85, at \*24–25;

___

supervisory approval is obtained by the date the IRS issues a Notice of Deficiency. *See Minemyer v. Commissioner*, Nos. 21-9006, et al., 2023 WL 314832, at \*5 (10th Cir. Jan. 19, 2023), *aff'g in part, rev'g and remanding in part* T.C. Memo. 2020-99. Under *Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), we follow a court of appeals' decision that "is squarely in point" when an appeal from our decision would lie to that court of appeals and to that court alone. Our Court has questioned whether the *Golsen* rule applies to nonprecedential opinions. *See Bennett Land Co. v. Commissioner*, 70 T.C. 904, 907 n.3 (1978). But we need not resolve this question here because, even applying the higher bar set forth in *Belair Woods*, we conclude that the Commissioner has satisfied the requirements of section 6751(b).

13

[*13] *Tribune Media Co. v. Commissioner*, T.C. Memo. 2020-2, at *19–20. Accordingly, Ms. Van Camp need not have approved the proposal of the penalties in the NOPAs. Instead, she must have approved them before the subsequent "initial determination."

B. *Workpaper*

That "initial determination" of the penalties was made in the Form 4605–A sent to Hobby Lobby on November 18, 2015. Ms. Van Camp signed the Workpaper on October 21, 2015, i.e., before the Form 4605–A was issued. But for the absence of an explanation of the "Reason(s) for Assertion of Penalty(s)," the contents of the Workpaper resemble the contents of the Civil Penalty Approval Form described in *Belair Woods*, 154 T.C. at 5–6, in which the Commissioner alleged that a partnership overvalued a conservation easement for which it claimed a charitable contribution deduction. The Court held in *Belair Woods* that the supervisor's signature on the Civil Penalty Approval Form satisfies section 6751(b). *See Belair Woods*, 154 T.C. at 17 (citing cases with the same holding). Ms. Van Camp's signature on the Workpaper here does as well. As we have held, section 6751(b) does not require the IRS to "demonstrate the depth or comprehensiveness of the supervisor's review"; the supervisor need only approve the penalties themselves, not the reasons for the penalties. *Belair Woods*, 154 T.C. at 17; *see also Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 86 (2019) ("Section 6751(b) does not require written supervisory approval on any particular form.").

The Trusts and the Greens do not dispute Ms. Van Camp's handwritten signature approving the penalties nor (except as inherent in their argument regarding the NOPAs) do they argue that the IRS made an "initial determination" before Ms. Van Camp signed the workpaper. In fact, the record does not include any communication from the IRS concerning the penalties between the NOPAs and the November 18, 2015, Form 4605–A and Letter 921 from RA Faulkenberry that communicated an opportunity to protest the adjustments and "request an Appeals conference." In short, the conclusion that Ms. Van Camp's signature on the Workpaper approving the penalties satisfies section 6751(b) cannot be avoided.

The Trusts and the Greens argue that the Workpaper is insufficient to satisfy section 6751(b) because it names Hobby Lobby as the taxpayer rather than specifically identifying the Trusts or the Greens themselves. This argument misses the mark. Under Treasury

**[\*14]** Regulation § 1.6662-5(h), whether a substantial or gross valuation misstatement exists in the case of a return of a passthrough entity, including an S corporation, is determined at the entity level. Although the liability of a particular shareholder for the penalty depends on the application of the threshold provided in section 6662(e)(2) at the shareholder level, *see supra* note 11, whether the penalty may potentially apply is first determined at the entity level.

Given this context, nothing in the text of section 6751(b) suggests that a penalty approval document naming the passthrough entity fails to satisfy the requirement for approval of the initial determination. As we have observed before, in enacting section 6751(b), Congress was concerned that "penalties [w]ould only be imposed where appropriate and not as a bargaining chip." *Palmolive Bldg. Invs., LLC*, 152 T.C. at 83 (quoting *Chai v. Commissioner*, 851 F.3d 190, 219 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42). Obtaining approval of valuation misstatement penalties under the name of the passthrough entity with respect to which the misstatements were determined is entirely consistent with both the text of the provision and its objective. *See Rogers v. Commissioner*, T.C. Memo. 2019-61, at \*23–24 (holding that section 6751(b) was satisfied by penalty approval forms signed with respect to S corporations in a case in which valuation misstatement and other section 6662 penalties were determined against a shareholder for adjustments to the S corporations' returns), *aff'd*, 9 F.4th 576 (7th Cir. 2021).[13]

## IV.     *Property-by-Property Valuation*

The Trusts and the Greens raise two further, related objections to the conclusion that the Commissioner satisfied procedural

---

[13] In arguing that the Commissioner failed to obtain the required supervisory approval, the Trusts and the Greens rely on *Genecure, L.L.C. v. Commissioner*, T.C. Memo. 2022-52, and *Sells v. Commissioner*, T.C. Memo. 2021-12, as "mak[ing] clear that written approvals with respect to each [p]etitioner were required." They misread both cases. In *Genecure*, T.C. Memo. 2022-52, at \*37, the Court held that penalties had not been properly approved with respect to a TEFRA partnership given that the penalty approval form named the individual partners rather than the entity. In *Sells*, T.C. Memo. 2021-12, at \*31–32, the Court held that penalties had not been properly approved with respect to certain individual partners of a non-TEFRA partnership because no approval had been obtained with respect to those partners. Given that in *Genecure*, T.C. Memo. 2022-52, at \*37, the Court specifically based its holding on the fact that there was no approval naming the passthrough entity and that in *Sells*, T.C. Memo. 2021-12, at \*29, there seems to have been no approval naming the passthrough entity, these cases offer the Trusts and the Greens no help.

**[\*15]** requirements when determining valuation misstatement penalties, both focused on the method the Commissioner employed to compute the penalties. Neither objection carries the day.

A. *Treasury Regulation § 1.6662-5(f)(1)*

Treasury Regulation § 1.6662-5(f)(1) requires that the determination of a substantial or gross valuation misstatement on a return be made "on a property-by-property basis." In their Motion, the Trusts and the Greens appear to ask us to invalidate the penalties based on this regulation, asserting that the Examination Division did not value each individual Contributed Artifact and calculated the penalties assuming a zero value for all Contributed Artifacts.[14]

But we generally will not look behind the Notices of Deficiency to examine the evidence the Examination Division used in making its determinations. *See Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974); *see also Barnes v. Commissioner*, T.C. Memo. 2004-266, slip op. at 33 (refusing to look behind the IRS's assertion of a valuation misstatement penalty). Thus, a procedural foot fault by the Examination Division, even if one existed, would not invalidate the penalties. The Trusts and the Greens offer no authority to the contrary.

This is not to say that the Trusts and the Greens are wrong about how the regulation works. They may well be correct that a property-by-property analysis is required in deciding whether a valuation misstatement penalty should apply. But we need not decide that question (i.e., how precisely any penalties should be computed) until after we have had a trial on the values of the Contributed Artifacts.

B. *Compliance with Section 6751(a)*

The Trusts and the Greens offer another similar ground for barring the Commissioner from imposing penalties here. They assert that the Commissioner failed to comply with section 6751(a), which requires the notice of penalty to include a computation of any penalty imposed. This is so, they argue, because the Commissioner calculated the penalties in the Notices of Deficiency by "assuming the donations

---

[14] The Trusts and the Greens point to advice the IRS Office of Chief Counsel apparently provided to the Examination Division in connection with Hobby Lobby's examination as consistent with this assertion.

**[\*16]** had no value rather than basing the computation of the penalties upon a valuation of each of the items donated." Again, we disagree.

Section 6751(a) provides: "Computation of penalty included in notice.—The Secretary shall include with each notice of penalty under this title information with respect to the name of the penalty, the section of this title under which the penalty is imposed, and a computation of the penalty." The Notices of Deficiency here included each of the statutory elements—the name of the penalty, the section of the Code under which it was imposed, and a computation. Indeed, the computation section of the Notices was labeled in bold "Penalty Computation."

That is all that the statute required. That the Commissioner might be mistaken about how the penalty *should* be computed would be a substantive problem going to the merits of the Commissioner's determination, not a procedural problem under section 6751(a). Put another way, so long as the Notices provided a computation, section 6751(a) is satisfied. And that the computation relied on an assumed property value of zero cannot be used to challenge the validity of the underlying penalty, as the Trusts and the Greens seek to do. In short, section 6751(a) provides no ground for barring the penalties, and the Trusts and the Greens are not entitled to partial summary judgment on that score.

V. *Applicability of Valuation Penalties*

We turn finally to the last ground on which the Commissioner seeks partial summary judgment. As we have already noted, the Commissioner seeks a ruling that "the Court may impose penalties for gross valuation misstatement under [section 6662(h)] and, in the alternative, substantial valuation misstatement under [section 6662(e)] to the extent [Hobby Lobby] actually [over]valued the [Contributed Artifacts]." Doc. 78, at 1.

Understanding the Commissioner's position on this issue requires some unpacking. The Motion appears to be a defensive move by the Commissioner. The Commissioner appears to be concerned that, if we were to conclude that the deductions at issue should be disallowed for reasons unrelated to the value of the Contributed Artifacts (e.g., because Hobby Lobby did not comply with the substantiation requirements of section 170(f)(11), a topic addressed in other Motions filed by the parties), the Trusts and the Greens could seek to block the application

**[\*17]** of the valuation-related penalties. To preserve his ability to seek valuation-related penalties, the Commissioner asks us to rule in advance that such penalties would not be foreclosed even if we were to disallow the deductions at issue for other reasons.

In making this request, the Commissioner points to *RERI Holdings I, LLC v. Commissioner*, 149 T.C. 1, 16–17 (2017), *aff'd sub nom. Blau v. Commissioner*, 924 F.3d 1261 (D.C. Cir. 2019). In that case, the Court disallowed a claimed charitable contribution deduction on nonvaluation grounds, but held that a valuation misstatement penalty was nevertheless appropriate. *See id.* at 21 ("We conclude that, if a taxpayer claims a deduction that overstates . . . the value or basis of property, any underpayment resulting from the disallowance of that deduction on grounds unrelated to valuation is nonetheless 'attributable to' the valuation misstatement, within the meaning of section 6662(b)(3) and (h)(1), to the extent that the underpayment relates to the disallowance of that portion of the deduction that exceeds the property's correct value or basis.").

The Trusts and the Greens have offered no response to the Commissioner's position on this specific point of law. Moreover, we have routinely followed this approach in other cases. *See, e.g.*, *Corning Place Ohio, LLC v. Commissioner*, T.C. Memo. 2024-72 (denying the entire amount of a charitable contribution deduction for failure to meet nonvaluation requirements of section 170 while also imposing section 6662 valuation misstatement penalties); *Oconee Landing Prop., LLC. v. Commissioner*, T.C. Memo. 2024-25 (same), *supplemented by* T.C. Memo. 2024-73. We see no reason yet why the outcome in these cases should be different as a legal matter. But we think that making a firm ruling now on the overall request the Commissioner makes would be premature because of the potential availability of a reasonable cause defense for certain of the penalties at issue.

As we have discussed, and with exceptions we have already highlighted, *see supra* Discussion Part II, under section 6664(c)(1), "[n]o penalty shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

The parties do not address in their Motion papers the potential applicability of the defense. But the Petitions and Answers reflect a factual dispute on the issue. Specifically, the Trusts and the Greens

**[*18]** assert in their Petitions that they "had reasonable cause and acted in good faith" with respect to any valuation misstatements on Hobby Lobby's returns, that the claimed values of the Contributed Artifacts "were based on qualified appraisals made by a qualified appraiser," and that "in addition to obtaining such appraisals," the Trusts and the Greens "made a good faith investigation of the value of the contributed property."

Moreover, the Trusts and the Greens indicate in their Motion papers that they have not waived their other defenses. By contrast, the Commissioner does not argue, much less establish, that there is no material dispute of fact with respect to reasonable cause.

Given the foregoing, we conclude a material dispute of fact exists with respect to reasonable cause. And, in view of that dispute, we decline to make at this stage of the proceedings the ruling the Commissioner seeks in his Motion.

## *Conclusion*

For the reasons set out above, we conclude that the Commissioner has met the requirements of section 6751(b), and the Commissioner's Motion will be granted to that extent. The remainder of the Commissioner's Motion and the Motion filed by the Trusts and the Greens will be denied.

To reflect the foregoing,

*An appropriate order will be issued.*